# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1096

_____

| | | |
|---|---|---|
| Jeanne Dovenmuehler, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| St. Cloud Hospital, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 5, 2007
Filed:  December 4, 2007

_____

Before LOKEN, Chief Judge, RILEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jeanne Dovenmuehler sued St. Cloud Hospital ("St. Cloud"), alleging that St. Cloud violated the Americans with Disabilities Act (ADA) and Minnesota's Human Rights Act (MHRA). Dovenmuehler contends that St. Cloud improperly terminated her based on her chemical-dependency disability. The district court[1] granted St. Cloud's motion for summary judgment, concluding that: (1) Dovenmuehler did not have an impairment under either the ADA or MHRA; (2) she was not limited in a major life activity; (3) St. Cloud did not regard her as disabled; (4) St. Cloud had no

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

duty to accommodate Dovenmuehler because she never disclosed her disability; and (5) she was not qualified for the job because the accommodation she required was unreasonable. The district court also found that St. Cloud had a legitimate nondiscriminatory reason for terminating Dovenmuehler and that Dovenmuehler failed to prove St. Cloud's reason was pretextual. We hold that Dovenmuehler has failed to establish that she is disabled under the ADA or MHRA. Therefore, we affirm.

## I. *Background*

We recite the facts in the light most favorable to Dovenmuehler, the nonmoving party. In the early 1980s, Dovenmuehler was addicted to cocaine. She attended in-patient treatment and has not used cocaine since. Dovenmuehler has been a registered nurse in Minnesota since 1993.

In July 2004, Dovenmuehler applied for a registered nurse position in St. Cloud's Children's Center. Dovenmuehler's employment application listed her previous nursing experience, but she did not disclose to St. Cloud why she left her previous employer, St. Joseph's Hospital ("St. Joseph's"). St. Joseph's terminated Dovenmuehler for stealing narcotics. That same month, Dovenmuehler voluntarily reported herself to Minnesota's Health Professional Services Program (HPSP) seeking help for chemical dependency.[2]

St. Cloud interviewed Dovenmuehler for a position in the Children's Center and hired her on August 5, 2004. The Children's Center treats patients ranging from pre-term babies through children age 17. Intensive care patients comprise about 65% of

---

[2]HPSP was created by Minnesota statute in 1994, and the Minnesota Board of Nursing participates. Minn. Stat. §§ 214.31–.37. The program monitors health professionals who have an illness or condition that may impair their ability to practice safely. If an individual does not abide by the plan HPSP creates for them, they may lose their professional license.

the unit's daily volume, and often 98% of those patients are under the age of two. In caring for these patients, Dovenmuehler's duties would include administering routine and emergency narcotics to patients who, due to age and illness, typically cannot communicate their medication needs.

St. Cloud hired Dovenmuehler but made the hiring contingent upon her completing a medical placement evaluation with St. Cloud's Occupational Health Services (OHS).[3] During her evaluation with OHS, Dovenmuehler disclosed that she had carpel tunnel syndrome, rare leg soreness, a previous back injury, and hepatitis C. She did not disclose that she was chemically dependent or that she had reported herself to HPSP. St Cloud placed Dovenmuehler's employment on hold due to her hepatitis C pending notification of clearance by the Minnesota Department of Health.

Six weeks into her new job, Dovenmuehler told OHS that she had previously reported herself to HPSP and that HPSP had issued a plan that she needed to follow in order to practice nursing safely. Dovenmuehler also told OHS that she had been terminated from St. Joseph's due to alleged theft of Vicodin, but she stated that she was fighting the charges. Dovenmuehler did not tell OHS that she was chemically dependent. St. Cloud's Human Resources Director called St. Joseph's, her previous employer, and confirmed that Dovenmuehler had been involuntarily terminated.

Dovenmuehler's HPSP plan, which was intended to address her chemical dependency, contained "practice restrictions" that would require St. Cloud to "maintain supervised access to controlled substances . . . for 2000 hours of professional practice or one year of continuous abstinence from alcohol and drugs of abuse and until HPSP authorizes in writing to lift or amend this restriction." The Human Resources Director and Dovenmuehler's supervisor met with Dovenmuehler

---

[3]OHS is an internal St. Cloud department that deals with nurses when they are sick or injured on the job.

to discuss the HPSP plan. They discussed compliance options for the HPSP plan including: limiting Dovenmuehler's duties so that she would not have access to medications; putting a "buddy" system in effect with a nurse from another unit; hiring an additional nurse to shadow Dovenmuehler during her shifts; visual oversight of Dovenmuehler; and transferring Dovenmuehler to another position in the Children's Center that would not involve medication.

St. Could, based upon prior experience with HPSP plans, construed "supervised access" as requiring, in some cases, constant observation. In deciding how to implement the HPSP plan, St. Cloud considered: what unit the employee worked in; the essential functions of each specific position; the unit size and location; the patient population being served; the staffing of the unit; and the budget for the unit. Looking at these factors, St. Cloud determined it could not accommodate Dovenmuehler's HPSP plan restriction because it would need to have a nurse shadow her at all times due to the duties of Dovenmuehler's position, the young patient population, and the private room layout of the unit where she would be working.

St. Cloud terminated Dovenmuehler on October 27, 2004, informing her that her position in the Children's Center would not permit the supervised narcotics access required by her HPSP plan. Since being terminated by St. Cloud, Dovenmuehler has been hired by University of Minnesota Fairview Hospital and St. Gabriel's Hospital. Both hospitals have implemented Dovenmuehler's HPSP plan restrictions.

The district court granted summary judgement to St. Cloud concluding, among other things, that "Plaintiff is not disabled under the ADA or MHRA. Defendant terminated Plaintiff because Defendant was given an HPSP plan that it could not fulfill with any reasonable accommodation." Thus, the district court granted the motion.

-4-

II. *Discussion*

On appeal, Dovenmuehler argues that the district court erred in granting summary judgment. She contends that the district court erred in finding that she did not demonstrate she is disabled or perceived as disabled. Dovenmuehler claims she met the burden of proving her prima facie case of discrimination.

We review de novo the district court's grant of summary judgment to St. Cloud. *Equal Employment Opportunity Comm'n v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (quotations and citation omitted).

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).[4] Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA. *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002). However, the ADA protects only individuals who are no longer using illegal drugs. *Campbell v. Minneapolis Public Housing Authority*, 168 F.3d 1069, 1072 n.1 (8th Cir. 1999).

ADA and MHRA disability discrimination claims are analyzed under the well-known *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Burchett v. Target Corp.*, 340 F.3d 510, 516 (8th Cir. 2003). The employee bears the initial burden of proving a prima facie case of

---

[4]Dovenmuehler also bases her claims on the MHRA, but she does not differentiate between the ADA and MHRA claims. Both are analyzed under *McDonnell Douglas* and federal precedent may be used to construe the MHRA. *See Reiff v. Interim Personnel, Inc*., 906 F. Supp. 1280, 1292 (D. Minn. 1995). It is appropriate that we treat the claims together. *See Larson v. Koch Refining Co.*, 920 F. Supp. 1000, 1004 (D. Minn. 1996).

discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802. The employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 802–03. Finally, to prevail, plaintiff must show that the defendant's proffered reason was a pretext for discrimination. *Id.* at 804.

Dovenmuehler's prima facie case of employment discrimination required that she prove (1) she has a disability within the meaning of the ADA or MHRA; (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Burchett*, 340 F.3d at 517 (citations and quotation omitted). The plaintiff bears the burden to prove she is disabled. *Id.*

Dovenmuehler has not met her burden on step one of the prima facie case. More specifically, she has not shown she has a disability within the meaning of the ADA or the MHRA. To show that she qualifies as disabled under federal and state law, Dovenmuehler must show that she: (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. Minn. Stat. § 363A.03, Subd. 12. *See also* 42 U.S.C. § 12102(2)(A). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, and working. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948 (8th Cir. 1999).

With respect to the prima facie case, Dovenmuehler makes three arguments on appeal. First, Dovenmuehler asserts that she is disabled due to chemical dependency. The record shows that in 2003 and 2004 various doctors concluded that Dovenmuehler smoked cigarettes occasionally, only drank alcohol occasionally and had probably shared needles with other drug users in the past. In September 2005, as part of her chemical dependency evaluation with HPSP, the evaluator concluded that Dovenmuehler's cocaine dependency was in remission, that she was an opiate abuser, and that she was at a high risk for relapse. Dovenmuehler stated in her deposition for

this case that she has been chemical free since 1988 and that she only relapsed once when she drank alcohol in February 2006. However, Dovenmuehler admitted to HPSP that in 2004 she resumed drinking, and she later diverted Vicodin from St. Joseph's for her own use.

Dovenmuehler's case is unique because her claimed disability has a peculiar feature. Certain behavior, while consistent with her claimed disability, also happens to be illegal. Such conduct is not protected by the ADA. Under the ADA "the term 'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. 12210(a).

Dovenmuehler argues that she is disabled because although she is currently sober, if she were to relapse, she would then be disabled. As the district court noted, this argument is unpersuasive and contrary to the ADA. Under the ADA, Dovenmuehler is not protected from the consequences of illicit conduct explainable by her chemical dependence, such as diverting hospital drugs intended for patients to personal use. Dovenmuehler admitted to the Board of Nursing that she diverted Vicodin for her own use from St. Joseph's. Neither the ADA nor MHRA protects appellant from the consequences of that conduct. In this case, the HPSP plan that St. Cloud considered an unreasonable accommodation stemmed directly from her unprotected, illegal conduct, not from her status as one chemically dependent. *See Larson v. Koch Refining Co.*, 920 F. Supp. 1000, 1004 (D. Minn. 1996).

Next, Dovenmuehler contends that because of her chemical dependency she is precluded from the major life activity of working. An individual is substantially limited in the major life activity of working if she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Kellogg v. Union Pacific R.R. Co.*, 233 F.3d 1083, 1087 (8th Cir. 2000) (citations and

quotations omitted). The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Id.* In determining if Dovenmuehler's major life activity of work is materially impaired by her chemical dependency, we must consider:

> (A) the geographical area to which the individual has reasonable access; (B) the job from which the individual has been disqualified because of the impairment and the class of similar jobs from which the individual also is disqualified because of the impairment; and/or (C) the job from which the individual has been disqualified and the broad range of jobs in various classes from which the individual also is disqualified because of the impairment.

*Id.*

Dovenmuehler argues that her chemical dependency is a lifelong illness and when she is not in remission she is unable to perform a range of jobs that require interpersonal skills and year-round work. However, the record belies this assertion. Dovenmuehler testified that her life activities outside work are not limited by her chemical dependency, and her medical records do not indicate her addictions have limited her major life activities, including working. Dovenmuehler has been employed steadily as a nurse since 1994, and she has been able to find nursing jobs at two different hospitals since her termination from St. Cloud. The only job from which Dovenmuehler has been precluded is the one at issue in the St. Cloud Children's Center—a job with special patient concerns not present in nursing jobs generally. Therefore, Dovenmuehler has not shown that she is limited in the major life activity of working.

Lastly, Dovenmuehler fails to adduce evidence that St. Cloud regarded her as disabled. To show that she was regarded as disabled under the ADA, Dovenmuehler must establish that St. Cloud "mistakenly believed that she had a physical impairment

that substantially limited one or more major life activities," or that St. Cloud "mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities." *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001). The record does not support her allegation that St. Cloud knew she was substantially limited in some major life activity or that St. Cloud regarded her as such.

Dovenmuehler has not carried her burden of proving the first part of the prima facie case for discrimination—she has not shown that she is disabled or perceived as disabled. Therefore, we need not analyze St. Cloud's legitimate reasons for terminating Dovenmuehler or Dovenmuehler's claims that those reasons are pretextual. Dovenmuehler failed to establish that she is disabled under the ADA and MHRA. The district court did not err in granting summary judgment.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____