# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3378

_____

David McNary,                           *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
      v.                                *   District Court for the
                                        *   Western District of Missouri.
Schreiber Foods, Inc.,                  *
                                        *
            Appellee.                   *

_____

Submitted: May 15, 2008
Filed: August 1, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

      David McNary sued Schreiber Foods, Inc. ("Schreiber"), alleging that Schreiber terminated him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101, et seq. The district court[1] granted Schreiber's motion for summary judgment, holding that McNary failed to show that there was a genuine issue of material fact as to whether Schreiber's proffered reason for McNary's termination was pretextual. We affirm.

_____

      [1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

## I. *Background*

We recite the facts in the light most favorable to McNary, the nonmoving party. *Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 437 (8th Cir. 2007). McNary, who suffers from Graves disease[2] and diabetes, was employed by Schreiber from 1978 until his termination in 2005. From 1999 until McNary's termination, Schreiber, a dairy product manufacturer and distributor, employed McNary in its Sanitation Department in Carthage, Missouri. At Schreiber, sanitation employees perform major clean-up, and they sanitize and set-up equipment on all plant lines.

According to McNary, he has had many conversations with his co-workers, including supervisors, regarding his need for breaks and his various other limitations caused by his medical conditions. On occasion, when McNary felt he could not perform certain tasks due to dizziness and other symptoms, his co-workers assisted him. However, McNary worked without any restrictions imposed or acknowledged by Schreiber. According to the summary judgment record, McNary's physicians stated that he is able to work without restrictions.

On September 22, 2005, McNary came into work on overtime to clean the wet and dry trash compactors. According to McNary, this job should take four to five hours. McNary clocked in at 1:25 p.m. After he clocked in, McNary prepared to clean the compactors for a few minutes. After McNary began cleaning the compactors,[3] he

---

[2]Graves disease is an autoimmune disorder that involves overactivity of the thyroid gland. Possible symptoms include protruding eyes, fatigue, double vision and eye irritation. *See* http://www.nlm.nih.gov/medlineplus/ency/article/000358.htm (last visited July 23, 2008).

[3]McNary now claims that he worked for an hour and a half before he felt sick. He deduces this hour and a half number from the fact that Swarnes and Johnston saw him resting from 2:55 p.m. until about 3:05 p.m., and McNary estimates he spent ten to fifteen minutes in the cage—therefore, he began resting his eyes around 2:50 p.m.

-2-

became dizzy, sick to his stomach, and light-headed. He left the compactors and went to the sanitation cage where he sat down, put his feet up on a table, and closed his eyes. According to McNary, he simply took a break[4] but was not sleeping—instead he rested his eyes for ten or fifteen minutes. Then, he realized Tom Johnston, his supervisor, and Jeremy Swarnes, interim Team Leader in the Sanitation Department, were standing near him.

According to Swarnes's affidavit, Swarnes entered the sanitation cage at 2:55 p.m. and observed McNary sitting at a table with his eyes closed. Based on Swarnes's personal observation, he believed McNary to be sound asleep as McNary showed no signs of having heard the noise caused when the gate shut behind Swarnes. Swarnes reported to Johnston that McNary was sleeping in the sanitation cage. Johnston and Swarnes returned to the sanitation cage shortly after 3 p.m., and McNary was in the same position as he had been when Swarnes left the sanitation cage to get Johnston. According to Johnston's affidavit, McNary was sitting at a table with his head back, his mouth open, and his eyes shut, and he did not appear to have heard an intercom that sounded as Johnston entered the sanitation cage. Based on Johnston's personal

---

and he clocked in at 1:25 p.m. so he worked for over an hour before resting. However, the record evidence indicates McNary worked for only ten to fifteen minutes before resting—he stated so in his deposition, and he did not deny the paragraph of Schreiber's uncontroverted material facts in which Schreiber stated McNary became sick ten to fifteen minutes into cleaning the compactors. Although we give McNary the benefit of reasonable inferences at this stage, the record indicates McNary worked ten to fifteen minutes before becoming sick. Even assuming that McNary had worked over an hour before resting, as we explain below, the issue is not whether he was actually on an authorized break but whether his supervisors reasonably believed him to be sleeping while not on break.

[4]Schreiber employees are entitled to take a fifteen minute regular break if the employee works for approximately four hours. The record indicates that generally an employee needs to work for an hour or two before breaks should be taken.

observation, he believed that McNary was asleep. According to Johnston, when he spoke to McNary and shook his shoulders, McNary reacted as if just awakened.

At this point, Johnston asked McNary if he was asleep, and McNary told him that he was not asleep but that he had a headache and eye pain. Johnston again asked McNary if he was asleep and, again, McNary told him that he had not been sleeping. McNary told Johnston and Swarnes that he had Graves disease and diabetes and that he had had eye surgery which often caused him pain so he had been resting his eyes. Johnston told McNary that was not Johnston's problem, that it was McNary's problem. Johnston told McNary that if he was not feeling well, he should go home, but McNary told Johnston he would finish up the job and then he would leave. Either Swarnes or Johnston asked McNary what time he had come in that day and McNary told them around one or one thirty. After that, McNary finished cleaning the compactors and went home.

After this conversation with McNary, Swarnes and Johnson pulled McNary's time record for the day to determine when he had reported for work. Knowing McNary's start time and the assigned task, they surmised that McNary was not on an approved break when he was found in the sanitation cage with his eyes closed. Johnston and Swarnes then wrote up a Corrective Action Form which placed McNary on a five-day suspension due to sleeping on duty, a Group III violation—the highest possible. Schreiber's Work Rules and Corrective Action Policy defines sleeping on duty as "intentionally leaving work area, other than regular break time, for the purpose of sleeping." McNary was given this Corrective Action Form and notified of his suspension on September 23, 2005, and Johnston and Swarnes presented the facts underlying the Corrective Action Form to the management team. The management team agreed that McNary should be terminated, and Schreiber terminated McNary. Upon learning of Schreiber's decision to terminate him, McNary requested peer review. The peer review committee reviewed and upheld the termination.

In January 2006, McNary filed the complaint in the current matter against Schreiber alleging a violation of the ADA. McNary contended that Schreiber discriminated against him based upon his physical condition. McNary alleged that he had informed Schreiber of his Graves' disease and diabetes, including advising Schreiber that he would need to take brief breaks to relieve eye pain or dizziness symptoms. Following discovery, the district court granted Schreiber's motion for summary judgment. The district court, for purposes of deciding the case, assumed McNary stated a prima facie case of discrimination under the ADA. The court then found that Schreiber provided a legitimate, nondiscriminatory reason for McNary's termination—sleeping on the job in violation of company policy. The court granted summary judgment for Schreiber because McNary failed to show that there was a genuine issue of material fact as to whether Schreiber's proffered reason was pretextual.

## II. *Discussion*

McNary argues on appeal that the district court erred in granting summary judgment for Schreiber because he produced sufficient evidence that the reason given for his termination was a pretext for discrimination. "We review de novo the district court's grant of summary judgment to [Schreiber]. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Dovenmuehler,* 509 F.3d at 439 (internal citations omitted). We view the facts in the light most favorable to McNary, the non-moving party and we give him the benefit of all reasonable inferences. *Van Horn v. Best Buy Stores*, *L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008).

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a).

ADA . . . claims are analyzed under the well-known *McDonnell Douglas* burden shifting analysis. The employee bears the initial burden of proving a prima facie case of discrimination. The employer then has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, to prevail, plaintiff must show that the defendant's proffered reason was a pretext for discrimination.

*Dovenmuehler*, 509 F.3d at 439 (8th Cir. 2007) (discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (internal citations omitted).

"To establish a prima facie case of disability discrimination, a plaintiff must show: (1) that she was disabled, (2) that she was qualified to do the essential job function with or without reasonable accommodation, and (3) that she suffered an adverse action due to her disability." *Buboltz v. Residential Advantages, Inc.*, 523 F.3d 864, 868 (8th Cir. 2008). We need not address whether McNary established a prima facie case. The district court's decision assumed McNary established a prima facie case of discrimination. Neither party has appealed any issue related to McNary's prima facie case.

The decision below turned on the issue of pretext. The district court found that Schreiber had provided a legitimate, nondiscriminatory reason for McNary's termination—violating the company policy prohibiting sleeping on the job. We agree. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) ("We have consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee").

To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason. This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations.

Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

*Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (internal quotations and citations omitted). "To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005) (internal citation omitted).

On appeal, McNary argues that he adequately rebutted Schreiber's termination justification. For rebuttal, McNary relies on evidence and argument that he did not actually violate company policy. He contends that he was on a regular break when employees are allowed to sleep or, in the alternative, if he was on an unauthorized break there was still no policy violation because he had been allowed to take breaks at his discretion for years. McNary's argument misses the mark. The relevant inquiry is not whether McNary actually violated the company policy nor is it whether he was actually sleeping. "A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *Twymon*, 462 F.3d at 935.

As we stated in an analogous but race-based discrimination case:

Whether he was sleeping or not, however, is irrelevant. [Appellant] has offered no evidence to dispute [appellees'] testimony that he was fired for taking an unauthorized break. Indeed, in his brief he admits [appellees] accused him of "taking an unauthorized break," noting she testified she saw him fifteen minutes after the end of his scheduled break time. Moreover, as [appellee] argues, also irrelevant is [appellant's] belief that he was still on break when [appellee] confronted him. Rather, the relevant inquiry is whether the University believed he was guilty of

the conduct justifying discharge, and here there is no evidence suggesting anything other than the University's honest belief.

*Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (affirming a grant of summary judgment for employer in race discrimination case) (internal quotations and alterations omitted). The situation here is similar. McNary simply has not produced facts showing that Johnston and Swarnes acted based on discriminatory animus for his disability. Whether they were correct in their surmise that McNary breached company policy is not the issue.

McNary also attempts to show pretext by claiming that Schreiber treated similarly situated employees differently. "Instances of disparate treatment can support a claim of pretext, but [plaintiff] has the burden of proving that he and the disparately treated [employees] were similarly situated in all relevant respects." *Sherman v. Runyon*, 235 F.3d 406, 409 (8th Cir. 2000) (quoting *Lynn v. Deaconess Med. Ctr. West Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). McNary alleges that in 2005 he and Marco Marroquin, a co-worker, saw Keith Fortenbaugh, a co-worker, asleep while at work. McNary also alleges that he saw Estell Tunnell, another co-worker, fall asleep at work several times—Tunnell admitted to sleeping while on breaks and to hearing about other employees sleeping while on break. Through depositions of co-workers, the record indicates co-workers of McNary saw and knew of others sleeping on breaks. McNary also points us to Marroquin's deposition in which Marroquin stated that Fortenbaugh was caught by supervisors, including possibly Johnston, sleeping at work while on an unscheduled break. Marroquin did not know if Fortenbaugh got in trouble. McNary has the burden to show that these other co-workers were similarly situated in all relevant respects, and McNary has not met that burden. *Id*. We agree with the district court that McNary has failed to present evidence to create a genuine issue as to disparate treatment.

We have often reiterated the following passage:

"[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." One reason we emphasize this point is that a number of plaintiffs present a sympathetic situation in which the employer's judgment in imposing discipline may appear poor or erroneous to outsiders. It is tempting to think that the role of the federal courts is to offer a remedy in that sort of case. Whether we might believe that [Schreiber] was unduly harsh in its treatment of [McNary], however, is not a matter to be considered in deciding this appeal. Our authority is to determine only whether there is a genuine issue for trial on the question whether [Schreiber] discharged [McNary] because of his [disability].

*Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 812 (8th Cir. 2005) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). We hold that McNary has failed to show that there is a genuine issue of material fact as to whether Schreiber's proffered justification was pretext for an illegal discriminatory motive based on his disability. Therefore, the district court's grant of summary judgment for Schreiber was proper.

### III. *Conclusion*

Accordingly, we affirm the district court's decision.

_____