SHEPHERD, Circuit Judge.
Appellants Brant and Nancy Sitzes (collectively “plaintiffs”), parents of Brittney and Shelby Sitzes, brought this action against Officer James Wright of the West Memphis, Arkansas, Police Department (WMPD), the City of West Memphis, and various city officials (collectively “defendants”). They alleged constitutional and state tort claims arising out of a traffic *464 accident in which a patrol car driven by Officer Wright struck the car driven by Brittney Sitzes, killing Brittney and severely injuring Shelby, her passenger. The district court[2] granted summary judgment in favor of the defendants on the plaintiffs’ federal claims and dismissed without prejudice their state tort claims. For the reasons stated below, we affirm.
I.
We recite the facts of this tragic case in the light most favorable to the plaintiffs, the nonmoving parties.[3] Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 437 (8th Cir.2007). On February 21, 2007, Officer Wright was on duty as a patrolman assigned to the northwest ward of West Memphis. At approximately 4:00 p.m., a man called 911 to report that two people claiming to be Wal-Mart security officers had stolen $55 from him and.his friend in the Wal-Mart parking lot. A WMPD dispatcher broadcast over the radio that there were men posing as security at WalMart, and WMPD Officer Charles Mark McDougal indicated that he would respond. Officer Wright also heard this radio dispatch and stated that he would respond as well.[4] Shortly thereafter, the man called 911 again and told the dispatcher that one of the alleged robbers had assaulted him. This information was also relayed over the police radio, at which time a third officer indicated that she was also en route to the scene.
In traveling to Wal-Mart, Officer Wright drove north on Rich Road, a residential street with a posted speed limit of 30 m.p.h. Witnesses estimated that Officer Wright was traveling at 80-90 m.p.h., well above the posted speed limit. Witnesses also stated that Officer Wright had neither his emergency lights nor his siren activated at the time, a fact that Officer Wright disputes. As he approached the intersection of Rich Road and Arlington Road, Officer Wright was traveling in the southbound (opposing) lane of traffic, attempting to pass cars traveling northbound. At the intersection of Rich and Arlington Roads there are no stop or yield signs for drivers on Rich Road, but there are stop signs for drivers on Arlington Road. Officer Wright stated in an affidavit that he believed the situation at the Wal-Mart was an emergency which required driving in this manner.[5]
Unfortunately, at the same time, Brittney Sitzes was also driving north on Rich Road ahead of Officer Wright, with her younger sister Shelby in the passenger seat. As Brittney approached the intersection with Arlington Road, she slowed and began to make a left-hand turn onto Arlington Road. As Officer Wright entered the intersection, he struck the driver’s side *465 of Brittney’s car as she executed her turn. Brittney was killed in the accident, and Shelby sustained severe injuries.
In February 2008, plaintiffs filed this action on behalf of Shelby and Brittney’s estate against Officer Wright, the City of West Memphis, and several city officials. They alleged various state law and constitutional violations, including conspiracy, failure to train, failure to supervise, and a substantive due process claim under 42 U.S.C. § 1983. In its April 10, 2009, opinion, the district court granted summary judgment to the defendants on plaintiffs’ federal claims and dismissed without prejudice their state law claims.[6] First, the district court granted summary judgment on plaintiffs’ conspiracy claim under the intracorporate conspiracy doctrine. See Meyers v. Starke, 420 F.3d 738, 742 (8th Cir.2005) (noting that “the intracorporate conspiracy doctrine ... allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy under [42 U.S.C.] § 1985” and that the doctrine has been “extended ... to governmental entities”). Second, the court held that Officer Wright did not have the intent to harm Brittney or Shelby when he struck their car, therefore his actions did not rise to the conscience-shocking level needed to sustain a substantive due process claim. Finally, because there was no underlying constitutional violation, the court granted summary judgment on the failure to train and failure to supervise claims against the city.
Plaintiffs appeal the district court’s grant of summary judgment. They argue that the district court used an improper standard of culpability in determining whether Officer Wright’s actions rise to the conscience-shocking level needed to establish a substantive due process claim and that there are genuine issues of material fact as to whether Officer Wright was responding to an emergency situation. Plaintiffs also argue that the district court erred in refusing to consider their failure to train and failure to supervise claims.
II.
We review the district court’s grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. See Irving v. Dormire, 586 F.3d 645, 647 (8th Cir.2009). We will affirm the grant of summary judgment if “there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law.” Fed. R. Civ.P. 56(c). Disputes that are not “genuine,” or that are about facts that are not “material,” will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Our starting point for analyzing this type of substantive due process ease is the Supreme Court’s decision in County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998). In Lewis, the parents of Philip Lewis, a 16-year-old motorcycle passenger who was killed during a high-speed pursuit by police, brought a § 1983 action alleging a deprivation of Lewis’s Fourteenth Amendment substantive due process right to life. Id. at 836-37, 118 S.Ct. 1708. The district court granted summary judgment to the police officer on the basis of qualified immunity, id. at 837-38, 118 S.Ct. 1708, but *466 the Ninth Circuit reversed, “holding that the appropriate degree of fault to be applied to high-speed police pursuits is deliberate indifference to, or reckless disregard for, a person’s right to life and personal security!.]” Id. at 838, 118 S.Ct. 1708 (quotation omitted).
The Supreme Court reversed, holding that “in a high-speed automobile chase aimed at apprehending a suspected offender ... only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a [substantive] due process violation.” Id. at 836,118 S.Ct. 1708. In doing so, the Court identified a continuum of culpability in the substantive due process context. See id. at 848-50, 118 S.Ct. 1708. At one end of the continuum is negligent conduct, which “is categorically beneath the threshold of constitutional due process.” Id. at 849, 118 S.Ct. 1708. At the other end is “conduct intended to injure in some way unjustifiable by any government interest,” which is the type “of official action most likely to rise to the conscience-shocking level.” Id. Between those poles lies culpability for “something more than negligence but less than intentional conduct, such as recklessness or gross negligence,” id. (quotations omitted), which, in at least some circumstances, states a substantive due process claim, id. (citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)).
The Court rejected this “midlevel” culpability standard in the context of high-speed police pursuits. Id. at 853-54, 118 S.Ct. 1708. Analogizing such pursuits to prison riots, the Court refused to impose liability for deliberate indifference to human life “when unforeseen circumstances demand an officer’s instant judgment,” such as when deciding whether to pursue a fleeing suspect. Id. at 853, 118 S.Ct. 1708. Instead, imposing substantive due process liability based on deliberate indifference is only appropriate “when actual deliberation is practical.” Id. at 851, 118 S.Ct. 1708. Thus, the Court held that “highspeed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment!.]” Id. at 854, 118 S.Ct. 1708.
We applied this ruling in Helseth v. Burch, 258 F.3d 867 (8th Cir.2001) (en banc). There, a driver was seriously injured when a suspect who was being pursued by police slammed into the driver’s pickup truck. Id. at 869. The driver brought a § 1983 claim against the pursuing officer. Id. In reversing the district court’s denial of qualified immunity, we held that “Lewis plainly stated that the intent-to-harm standard, rather than the [lower] deliberate indifference standard, applies to all highspeed pursuits aimed at apprehending suspected offenders!,]” regardless of whether the officer truly had “ample time to deliberate.” Id. at 871.
We applied the Lewis intent-to-harm standard again in Terrell v. Larson, 396 F.3d 975 (8th Cir.2005) (en banc). There, deputy sheriffs, responding to a report of a woman threatening to harm her three-year-old daughter, drove through an intersection at approximately 60 m.p.h. and struck Talena Terrell’s car, killing her. Id. at 977. Terrell’s heirs brought a § 1983 action against the officers, alleging that their decision to respond and the operation of their vehicle violated Terrell’s substantive due process rights. Id. The deputies moved for summary judgment, arguing that the plaintiffs had no evidence that the deputies intended to harm Terrell. Id. The district court held that summary judgment was improper because there was a dispute of fact as to whether the deputies were responding to an emergency. Id. at 977-78.
*467 We reversed the district court, noting that “[t]he deliberate indifference standard is sensibly employed only when actual deliberation is practical,]” id. at 978 (quoting Leivis, 523 U.S. at 848-49, 118 S.Ct. 1708), and that “[b]y contrast, the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation!;,]” id. (quoting Neal v. St. Louis County Bd. of Police Comm’rs, 217 F.3d 955, 958 (8th Cir. 2000)). In reversing, we expanded Lewis’s holding in two significant respects. First, we held “that the intent-to-harm standard of Lewis applies to an officer’s decision to engage in high-speed driving in response to other types of emergencies [besides the high-speed pursuit of a fleeing suspect], and to the manner in which the police car is then driven in proceeding to the scene of the emergency.” Id. at 979. This extension of the intent-to-harm standard to situations other than high-speed pursuits was in line with other circuits that had considered the issue. See id. (citing cases). Second, because “substantive due process liability ... turns on the government official’s evil intent,” we rejected the district court’s objective consideration of what constituted an emergency and “conelude[d] that [the] issue turns on whether the deputies subjectively believed that they were responding to an emergency.” Id. at 980. Because it was undisputed that the deputies believed they were responding to an emergency, the intent-to-harm standard was appropriate. Id. We left for another day the question of “whether a different rule should apply if an official’s claim of perceived emergency is so preposterous as to reflect bad faith.” Id. at 980 n. 2.
It is against this legal background that we examine the present case. To establish a substantive due process violation, plaintiffs must show that “the behavior of [Officer Wright was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.” Leivis, 523 U.S. at 847 n. 8, 118 S.Ct. 1708. Whether actions rise to this conscience-shocking level is contextual, depending in large part on the level of culpability plaintiffs must prove that Officer Wright possessed. Terrell, 396 F.3d at 978. We must also keep in mind that substantive due process liability is narrow, applying only to the most egregious conduct, and that “the Fourteenth Amendment is not a ‘font of tort law to be superimposed upon whatever systems may already be administered by the States[.]’ ” Lewis, 523 U.S. at 848, 118 S.Ct. 1708 (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). “Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury.” Terrell, 396 F.3d at 981; see also Collins v. City of Darker Heights, 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).
The district court, relying primarily on Terrell, held that the Lewis intent-to-harm standard applied to Officer Wright’s conduct. The court further held that Officer Wright was responding to an emergency and that, because there was no evidence that he intended to harm Brittney or Shelby, summary judgment was appropriate. Plaintiffs argue that this is not the type of situation to which the intent-to-harm standard properly applies. They argue that Officer Wright was responding to a non-emergency call, that he had time to evaluate his actions, and that we should not effectively absolve him from substantive due process liability based on his self-serving statement that he believed the situation at the Wal-Mart to be an emergency. Thus, plaintiffs argue that the lower *468 deliberate indifference standard should apply here. Officer Wright counters that Terrell forecloses any inquiry into whether the situation was objectively an emergency, and that his affidavit, stating that he believed he was responding to an emergency, is sufficient to require application of the intent-to-harm standard.
Although we are deeply troubled by Officer Wright’s actions, we cannot say that the district court erred in applying the intent-to-harm standard in this case. First, we must reject plaintiffs’ primary argument, which bases liability on the situation at Wal-Mart not being a “true” emergency. Terrell forecloses inquiry into the objective nature of the emergency, as substantive due process liability turns on the intent of the government actor. 396 F.3d at 980. Thus, the fact that the situation at the Wal-Mart was not as serious as those presented in Helseth or Terrell, or that it might not qualify as an “emergency” under the WMPD Policy and Procedure manual, is not determinative of the appropriate level of scrutiny. Neither is the fact, emphasized by the dissent, that Officer McDougal and others testified that they would never have driven in the manner that Officer Wright did, or that Officer McDougal responded to the situation at the Wal-Mart differently than Officer Wright. This would all be more relevant if our question was whether the situation was an objectively “true” emergency. However, it bears little relevance to the question of what Officer Wright subjectively believed, and is emblematic of the kind of “fact-intensive, hindsight-oriented approach” that is inappropriate in this context. Helseth, 258 F.3d at 871 n. 2.
Second, although Officer Wright arguably had more time to deliberate on his actions than would an officer engaged in a high-speed pursuit, we do not “reject intent-to-harm as the governing standard whenever a judge or a jury could say, with the wisdom of hindsight, that an officer engaged in a high-speed pursuit had ample time to deliberate.” Id. at 871 (quotation omitted). In Terrell, we held that officers who were ten miles away from the reported disturbance, who were eating dinner at a police substation at the time they received the call, and who were told twice by the police dispatcher that they need not respond to the call, nevertheless did not have “the luxury of calm and reflective deliberation” in deciding whether or not to respond. 396 F.3d at 978 (quotation omitted). Because the officers had to “make a quick decision how best to protect the public and maintain lawful order,” we held that the intent-to-harm standard governed their actions. Id. at 979. The officers in Terrell clearly had more time to deliberate on their actions than Officer Wright did here. Thus, the amount of time Officer Wright had to deliberate on his actions is not, by itself, sufficient to render the intent-to-harm standard inapplicable.
Third, even assuming, as we must, that Officer Wright had neither his emergency lights nor his siren in operation, the fact remains that the only direct evidence of Officer Wright’s subjective belief — his affidavit — indicates that he did perceive the situation at Wal-Mart to be an emergency. Recognizing this, plaintiffs and the dissent argue that we should not take Officer Wright’s belief at face value and that the fact that he did not have his emergency lights or siren activated is evidence that he did not truly perceive this to be an emergency. Although the plaintiffs did not stipulate in the district court that Officer Wright subjectively believed he was responding to an emergency, they did not question this belief at his deposition. Indeed, in their response to the defendants’ Joint Statement of Material Facts Not in Dispute, they admitted that Officer Wright *469 stated in his affidavit that he believed the situation to be an emergency, but argued that “the evidence is overwhelming that it was not.” This is a challenge to the objective nature of the situation at the WalMart, not the sincerity of Officer Wright’s subjective belief. Thus, it appears that the question of Officer Wright’s subjective belief may not have been presented to the district court. Likewise, on appeal, plaintiffs focus almost exclusively on the objective reasonableness of Officer Wright’s avowed belief that he was responding to an emergency. Nevertheless, the dissent argues that a jury should have examined the veracity of Officer Wright’s professed belief, along with its objective reasonableness. Although Officer Wright’s failure to engage his emergency lights and siren is arguably incompatible with a belief that he was responding to an emergency, we conclude that an inquiry into the objective reasonableness of Officer Wright’s belief is contrary to the intent of Terrell, which is to insulate police officers from liability when they believe they are responding to an emergency call.
Terrell implied, but did not explicitly hold, that a different rule might apply “if an official’s claim of perceived emergency is so preposterous as to reflect bad faith.” 396 F.3d at 980 n. 2. In essence, this requires us to take at face value an officer’s characterization of a situation as an emergency in all but the most egregious cases. Although this case approaches that bad faith line, it does not cross it. Viewing the record in the light most favorable to the plaintiffs, Officer Wright’s belief that the theft of property and assault that occurred in the Wal-Mart parking lot constituted an emergency was likely mistaken and perhaps even unreasonable. Were it not for the language in Terrell, this unreasonableness might be enough to remove this case from the intent-to-harm realm of eases. However, we are bound by Terrell, and we find that Officer Wright’s belief is not so preposterous as to reflect bad faith. Rather, the situation at Wal-Mart “lies somewhere in the vast middle ground,” Green v. Post, 574 F.3d 1294, 1301 n. 7 (10th Cir.2009), between “clear” emergencies and “clear” nonemergencies. As such, the unreasonableness of Officer Wright’s belief is not enough to render the intent-to-harm standard inapplicable here.
We agree with the dissent that our opinion should not be read to establish a rule that an officer can insulate himself from substantive due process liability, no matter the circumstances, by simply averring that he subjectively believed the situation to which he was responding was an emergency. See Terrell, 396 F.3d at 980 n. 2. This could lead to the absurd results forecasted by the dissent. For example, the dissent fears that this case could be used to insulate from substantive due process liability an officer who drove “100 miles per hour through a children’s playground during recess time,” or an officer who drove “the wrong way down an interstate highway ... when responding to something as routine as a reported accident requiring traffic control[,]” as long as the officer stated that he believed the situation to be an emergency. Infra at 28. First, such cases are far beyond the factual scenarios of Lewis, Helseth, and Terrell, which involved officers using conventional emergency driving techniques to respond to perceived emergencies. Nothing in our opinion would countenance granting summary judgment in either of the two situations presented by the dissent. Second, we think it very likely that an officer who intentionally drove through a playground or the wrong way on an interstate highway could be held liable even under the intent-to-harm standard, regardless of the officer’s avowed belief, at least absent some compelling exigency not described in the *470 hypotheticals. In sum, we do not understand this case to establish a per se rule that an officer’s self-serving affidavit will always insulate that officer from substantive due process liability. Instead, we simply hold that the plaintiffs have failed to create a genuine issue of fact as to Officer Wright’s subjective belief and that this belief is not so preposterous as to reflect bad faith on the part of Officer Wright.
The dissent also cites two qualified immunity cases, Moore v. Indehar, 514 F.3d 756 (8th Cir.2008), and Felder v. King, 599 F.3d 846 (8th Cir.2010), for the proposition that, in some contexts, we look beyond an officer’s professed subjective belief. Both cases dealt with officer-involved shootings and held that factual questions precluded summary judgment on the plaintiffs’ § 1983 Fourth Amendment claims for excessive force. Importantly, neither case involved a substantive due process claim governed by Lewis, Helseth, and Terrell. Moreover, Felder was governed by the Fourth Amendment’s objective reasonableness standard, see Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), not the subjective standard at issue here. Thus, the fact that, in those cases, there was evidence sufficient to create a genuine issue of material fact does little to affect our analysis here.
For the reasons stated above, we hold that the intent-to-harm standard applies as a matter of law to Officer Wright’s conduct.[7] Because there was no evidence that Officer Wright intended to harm Brittney or Shelby Sitzes, the district court correctly granted summary judgment in favor of the defendants. While accidents such as this are tragic, they “do not shock the modern-day conscience.” Terrell, 396 F.3d at 981. As such, they cannot form the basis of substantive due process liability.[8]
The district court also granted summary judgment to the defendants on plaintiffs’ failure to train and failure to supervise claims, holding that such claims could not be sustained absent an underlying constitutional violation by the officer. We agree. See City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, *471 89 L.Ed.2d 806 (1986) (per curiam); Monell v. Dep’t of Soc. Sews., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (“Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.”); Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 527 (8th Cir.2007) (“Without a constitutional violation by the individual officers, there can be no § 1983 or Monell failure to train municipal liability.”).
III.
For the reasons stated above, we affirm.

. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

. The dissent correctly notes that the district court failed to properly view some of the evidence in the light most favorable to the plaintiffs. See infra at 15. Since our review is de novo, this does not, by itself, constitute reversible error.

. Although the district court stated that Officer Wright was traveling to Wal-Mart because of a request for backup, Officer Wright testified in his deposition that it is WMPD policy for two patrol cars to respond to every call and that he decided to respond because the Wal-Mart was in his assigned ward and he felt it would be his responsibility to take the report. Officer McDougal did later make a request for backup, but only after Officer Wright's accident.

. Officer Wright’s affidavit was filed as an exhibit to his motion for summary judgment well after Officer Wright's deposition. Plaintiffs conceded that Officer Wright made this statement but argued that the evidence did not support his belief.

. The district court made certain to note that the Arkansas savings statute, Ark.Code Ann. § 16-56-126, protects plaintiffs’ state law claims from any statute of limitations problems. See Sitzes v. City of W. Memphis, Ark., No. 3:08-CV-00026, slip op. at 7 n. 34 (E.D.Ark. Apr. 10, 2009) (citing Carton v. Mo. Pac. R.R., 295 Ark. 126, 747 S.W.2d 93 (1988)). To our knowledge, plaintiffs’ state law claims remain active.

. Although we hold that the intent-to-harm standard applies to Officer Wright's conduct, we question whether the plaintiffs could have prevailed even under the deliberate indifference standard. See Green v. Post, 574 F.3d 1294, 1296-97, 1303-04 (10th Cir.2009) (deputy sheriff’s actions of traveling through an intersection at a high rate of speed, without his lights or sirens on, in response to a non-emergency call held to be negligent but not conscience-shocking under the deliberate indifference standard); Leddy v. Twp. of Lower Merion, 114 F.Supp.2d 372, 374, 376 (E.D.Pa. 2000) (officer’s actions of traveling at an excessive rate of speed, without his lights or sirens on, in response to a report of a suspicious parked vehicle held to be negligent or even reckless, but not conscience-shocking under the deliberate indifference standard); Daniels v. City of Dallas, 272 Fed.Appx. 321, 322-23 (5th Cir.) (unpublished per curiam), cert. denied,-U.S.-, 129 S.Ct. 648, 172 L.Ed.2d 615 (2008) (officer’s high-speed response to a nonemergency call, where he did not engage his lights or sirens, held not to be conscience-shocking under either intent-to-harm or deliberate indifference standard).

. Nothing in our opinion should be read to minimize the tragic nature of this accident. Viewing the record in the light most favorable to the plaintiffs, Officer Wright's actions were perhaps negligent, even reckless. Arguably, were it not for Officer Wright’s profoundly poor judgment, this accident would not have happened. Nonetheless, we are bound to apply the law as we understand it, remembering that "the Fourteenth Amendment is not a font of tort law.” Lewis, 523 U.S. at 848, 118 S.Ct. 1708 (quotation omitted). Thus, we hold that Officer Wright’s actions do not rise to the conscience-shocking level needed to sustain a substantive due process claim, and we leave the plaintiffs to their state law remedies.