# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2961

_____

Lori Braun, As Administratrix of the Estate of Cassandra Braun, deceased, Individually and on Behalf of all Wrongful Death Beneficiaries of, Cassandra Braun

*Plaintiff - Appellant*

v.

Brian Ray Burke, Trooper, Individually as an Officer of the Arkansas State Police; Bill Bryant, Colonel, Individually as the Chief Executive Officer of the Arkansas State Police

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 22, 2020
Filed: December 23, 2020

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The high-speed police pursuit of a speeding vehicle tragically ended with a car crash killing Cassandra Braun. Her mother (and estate administrator), Appellant Lori Braun ("Braun"), brought this case, alleging constitutional violations against

the officer involved in the accident (Appellee Arkansas State Police Trooper Brian Burke) and his supervisor (Appellee Director of Arkansas State Police Bill Bryant). The district court[1] granted summary judgment for the Appellees on all claims. For the following reasons, we affirm.

## I.

On the night of October 10, 2016, Trooper Burke was working a hit-and-run accident in a parking lot along Highway 70. While there, he saw a dark-colored sport utility vehicle ("SUV"), with flashing hazard lights, speed past. Trooper Burke estimated the SUV was traveling at ninety to ninety-five miles per hour in a fifty-five mile-per-hour zone. Less than two minutes later, Trooper Burke wrapped up the hit-and-run investigation, got into his police cruiser, and turned onto Highway 70 to pursue the SUV.

Although Trooper Burke initially activated his emergency lights and sirens, he turned them off roughly twenty seconds later. During the pursuit, his speed averaged over ninety miles per hour, peaking at more than 110 miles per hour. In a later affidavit, Trooper Burke stated that he believed the SUV "posed a serious risk to the motoring public, thus creating a dangerous situation." "Believing that there was an emergently dangerous situation, [he] decided to try and stop the vehicle in order to end the risk to the public."

As Trooper Burke headed east on Highway 70 searching for the SUV, Cassandra Braun was a passenger in a car driving west on the same highway. Roughly eight miles from where Trooper Burke started, Cassandra Braun's car turned left, entering Burke's lane. Although Trooper Burke tried to stop his car, he was unable. The resulting crash killed Cassandra Braun and seriously injured Trooper Burke.

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

Braun brought this case under 42 U.S.C. § 1983, arguing Trooper Burke violated Cassandra Braun's substantive due process right to life under the Fourteenth Amendment. Braun further claimed that Director Bryant violated Cassandra Braun's rights by failing to properly train, supervise, or discipline Trooper Burke. The district court granted summary judgment for Appellees on all claims, finding no constitutional violations. Braun appeals.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to, and drawing all reasonable inferences for, the nonmovant. *Jones v. Frost*, 770 F.3d 1183, 1185 (8th Cir. 2014). "Summary judgment is proper when there is no genuine dispute of material fact and the prevailing party is entitled to judgment as a matter of law." *Id.*

To establish a substantive due process violation under the Fourteenth Amendment, Braun must show that Trooper Burke's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *See Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (en banc).[2] In evaluating her substantive due process claim, we first must determine what level of culpability Braun must prove to demonstrate Burke's behavior was conscience shocking. *See id.* Negligence is never enough. *Id.* Deliberate indifference makes sense "only when actual deliberation is practical." *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)). But, typically—and especially in "rapidly evolving, fluid, and dangerous situations"—the plaintiff must show an intent to harm. *Id.* Here, Braun argues we should apply the deliberate indifference standard and implicitly concedes she cannot satisfy a higher standard. Conversely, Appellees argue we should require an intent to harm.

---

[2]Braun must also show the conduct violated a fundamental right, but we need not address that part of the inquiry here. *See Terrell*, 396 F.3d at 978 n.1.

In *Lewis*, the Supreme Court held that the intent-to-harm standard applies when an officer is engaged in a high-speed chase of a suspect. 523 U.S. at 854. Expounding on this principle in *Terrell*, we extended the intent-to-harm standard "to an officer's decision to engage in high-speed driving in response to other types of emergencies." 396 F.3d at 979. Whether an officer was responding to an "emergency" is a subjective, not objective, inquiry. *Id.* at 980. Accordingly, we will accept an officer's statement that he believed he was responding to an emergency unless it is "so preposterous as to reflect bad faith." *Sitzes v. City of W. Memphis*, 606 F.3d 461, 469 (8th Cir. 2010).

Here, Trooper Burke was pursuing an SUV traveling at night at a high speed with its hazard lights flashing. He estimated the SUV was traveling nearly 100 miles per hour, almost twice the fifty-five mile-per-hour speed limit. Crucially, Trooper Burke's affidavit states that he believed this was an "emergently dangerous" situation that "posed a serious risk to the motoring public." The affidavit further states that Trooper Burke believed his pursuit was necessary to end this dangerous situation. He thus believed he was responding to an emergency, triggering the intent-to-harm standard.

Braun's contrary arguments miss the mark. First, pointing to *Terrell* and *Sitzes*, she seems to suggest that our prior decisions extend the intent-to-harm standard only to situations where officers respond to an emergency *call*, not (presumably) emergencies officers witness themselves. Not so. Although the officers in *Terrell*, 396 F.3d at 977, and *Sitzes*, 606 F.3d at 464, were responding to emergency calls, we never suggested the way an officer learns of an emergency is crucial. Rather, and as the Supreme Court has explained, the determining factor is the unavailability of "actual deliberation." *See Lewis*, 523 U.S. at 851. This might be present when an officer responds to an emergency call or when, as here, an officer witnesses an emergency firsthand.

Second, Braun asks us to reject as preposterous Trooper Burke's belief that the speeding SUV constituted an emergency because he finished his hit-and-run investigation and "saunter[ed]" to his car before pursuing the SUV. For one, Braun overstates the delay. Trooper Burke pursued the SUV less than two minutes after it raced past. *Cf. Terrell*, 396 F.3d at 977, 980 (applying the intent-to-harm standard to officers who received an emergency call while eating dinner, were ten miles from the emergency, and were twice told they were not needed). Regardless, we rejected this precise argument in *Sitzes*. 606 F.3d at 468 ("[T]he amount of time [an officer] had to deliberate on his actions is not, by itself, sufficient to render the intent-to-harm standard inapplicable."). Braun also claims that Trooper Burke's failure to use his emergency lights or siren for most of the pursuit shows he did not really believe this was an emergency. But, again, Braun's argument runs headlong into *Sitzes*. There, we held that an officer's failure to activate emergency lights or siren, while "arguably incompatible with a belief that he was responding to an emergency," was insufficient to overcome the officer's contrary affidavit. 606 F.3d at 469. So too here.

Indeed, our decision in *Sitzes* is generally instructive. There, an officer learned from a police dispatcher that someone had been assaulted and robbed of $55 in a Wal-Mart parking lot. *Id.* at 464. The officer responded (even though another officer was already en route), driving at speeds of at least eighty miles per hour in a thirty mile-per-hour zone on the wrong side of the road. *Id.* We seriously doubted the parking lot heist constituted an actual emergency. *Id.* at 469. Still, we held that the officer's affidavit stating he believed he was responding to an emergency was not so preposterous as to reflect bad faith. *Id.* Even more so here, where the officer was facing an active threat to public safety, we are unwilling to find Trooper Burke's belief preposterous.

Finally, Braun insists that speeding does not constitute an actual emergency. This argument goes nowhere. Again, the emergency inquiry is a subjective, not objective, one.

In sum, Trooper Burke believed he was responding to an emergency, and thus we apply the intent-to-harm standard. This resolves Braun's claim against him, as she does not even argue, much less present any evidence, that he intended to harm anyone. Therefore, the district court correctly granted summary judgment for Trooper Burke on Braun's substantive due process claim because she failed to establish a constitutional violation.

Consequently, the district court also rightly granted summary judgment for Director Bryant. Braun's failure-to-train-or-supervise claim against Director Bryant requires an underlying constitutional violation. *White v. Jackson*, 865 F.3d 1064, 1076 (8th Cir. 2017); *Brockinton v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007). Because Braun's claim against Trooper Burke fails, so does her claim against Director Bryant.

For the foregoing reasons, we affirm.

COLLOTON, Circuit Judge, concurring.

I join the opinion of the court and submit these observations regarding the separate concurring opinion that follows.

In *Terrell v. Larson*, 396 F.3d 975 (8th Cir. 2005) (en banc), this court held that in determining the requisite level of culpability to prove a substantive due process claim against a law enforcement officer, there is no legally significant distinction between high-speed driving in pursuit of a suspect and high-speed driving in response to other types of emergencies. *Id*. at 978-979. The court rejected the use of an objective standard to determine whether a particular situation constitutes an emergency that triggers the "intent-to-harm" standard of fault that applies to high-speed pursuits under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Because "substantive due process liability is grounded on a government official's subjective intent, and because the intent-to-harm standard applies 'when unforeseen circumstances demand an officer's instant judgment' and 'decisions have to be made

in haste, under pressure, and frequently without the luxury of a second chance,'" the court ruled that "this issue turns on whether the deputies subjectively believed that they were responding to an emergency." *Id*. at 980 (quoting *Lewis*, 523 U.S. at 853). The "intent-to-harm" standard thus applies to a substantive due process claim both when an officer believes that he is pursuing a suspect and when an officer believes that he is responding to another type of emergency. The suggestion of the concurrence, *post*, at 8, that there is a "legally significant" distinction between the two types of cases runs counter to *Terrell*.

More significantly, the concurrence asserts that our decision in this case "helps illustrate a growing circuit split" on the level of culpability required to establish a substantive due process claim. *Post*, at 9. The suggested conflict in authority, however, is illusory. In *Dean v. McKinney*, 976 F.3d 407 (4th Cir. 2020), the defendant officer acknowledged that an "emergency" call had been cancelled, and stated affirmatively that he was "backing down" to a non-emergency response. *Id*. at 415-16. At a minimum, there was a factual dispute about whether the officer believed in good faith that he was responding to an emergency. In *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018), which involved a motion to dismiss a complaint, the officer allegedly observed only a "summary" or "minor" traffic offense, and then pursued the violator at over 100 miles per hour. *Id*. at 715-16. The complaint alleged that there was no emergency, and there was no allegation that the officer believed he was responding to an emergency. *Id*. at 718. Neither of the cited cases, therefore, applied a "deliberate indifference" standard of fault in a case where it was undisputed that the officer believed he was responding to an emergency.

As for whether the outcome in this appeal "seems unjust," *post*, at 8, it is important to bear in mind the limited issue before this court. This case concerns only whether the plaintiff's evidence is sufficient to establish liability for a constitutional tort under the concept of substantive due process. We do not address whether the state trooper's actions were prudent as a matter of policy or whether such an officer should be liable for harm caused by reckless driving under traditional state tort law. The State of Arkansas is free to create a system of tort liability for

law enforcement officers that could encompass the conduct at issue here, but the Fourteenth Amendment is not "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701 (1976).

GRASZ, Circuit Judge, concurring.

I concur with the court's opinion. Precedent requires it. But if the outcome also seems unjust, I can understand why. Two people tragically died after a state trooper sped and endangered the public in order to try to locate a car previously seen speeding.

I write separately to address two points. One is a point of factual emphasis and the other is simply an observation related to the need for clarity in the interest of public understanding as well as the preservation of respect for the rule of law.

First the point of factual emphasis. This is not a case involving a high-speed pursuit of a fleeing suspect. *Cf. Helseth v. Burch*, 258 F.3d 867, 871 (8th Cir. 2001) (en banc) ("We hold that the intent-to-harm standard of [*County of Sacramento v. Lewis*, 523 U.S. 833, 847–49 (1998)] applies to all § 1983 substantive due process claims based upon the conduct of public officials engaged in a high-speed automobile chase aimed at apprehending a suspected offender."). The facts, when viewed in the light most favorable to Braun, show that this was instead a hunt for a suspect whose whereabouts were unclear. That distinction is legally significant. It matters because when an officer is not in pursuit of a fleeing suspect, our precedent requires the district court to engage in an additional step: determining whether the officer subjectively believed he was responding to an "emergency." *See Terrell v. Larson*, 396 F.3d 975, 980 (8th Cir. 2005) (en banc) ("Under *Lewis*, the intent-to-harm culpability standard applies if they believed they were responding to an emergency call."). While that difference is important for future cases, the result here is the same. That is because no facts were presented to create a triable fact on the trooper's subjective belief under *Sitzes v. City of West Memphis*. *See Sitzes*, 606

F.3d 461, 469–70 (8th Cir. 2010) ("We do not understand this case to establish a per se rule that an officer's self-serving affidavit will always insulate that officer from substantive due process liability."). As a consequence, in this case we must accept the trooper's affidavit stating he believed there was an emergency that required him, after concluding his work at the scene of a hit and run accident, to drive ninety-eight miles per hour on a public highway without emergency lights or sirens to try to locate a car he had earlier seen . . . speeding.

Now to the observation. This case helps illustrate a growing circuit split on when and how to apply the requisite level of culpability under *County of Sacramento v. Lewis*, 523 U.S. 833, 847–49 (1998). *Compare Dean v. McKinney*, 976 F.3d 407, 414–16 (4th Cir. 2020) (en banc) (looking at objective facts beyond the officer's subjective arguments to decide that deliberate indifference applied), *and Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 715, 717–18 (3d Cir. 2018) (deciding that deliberate indifference applied after using objective factors to determine that no emergency existed), *with Bingue v. Prunchak*, 512 F.3d 1169 1176–78 (9th Cir. 2008) (applying an intent-to-harm standard), *and Terrell*, 396 F.3d at 980 ("[T]his issue turns on whether the deputies subjectively believed that they were responding to an emergency."). A uniform standard, or at least more clarity on when each standard applies, would advance respect for the rule of law in this area. This is especially true when, as here, there was time to deliberate before engaging in the high-speed driving that caused the accident and it was not a situation where the circumstances demanded an officer's instant judgment or a decision under pressure.

———————————————