**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0401n.06

No. 08-3339

**FILED**
**Jun 03, 2009**
LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TOMMY FULLER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO AT CLEVELAND |
| CUYAHOGA METROPOLITAN | ) | |
| HOUSING AUTHORITY, et al., | ) | |
| | ) | |
| Defendants-Appellees, | ) | |

**BEFORE: COLE, GIBBONS, Circuit Judges; and BELL, District Judge.**[*]

**BELL, DISTRICT JUDGE.** Plaintiff-Appellant Tommy Fuller appeals the district

court's entry of summary judgment for defendants on his claims under 42 U.S.C. § 1983 and

state law for unreasonable search and seizure, excessive force, malicious prosecution, and

intentional infliction of emotional distress.[1] For the following reasons, we **AFFIRM**.

**I. BACKGROUND**

Plaintiff Tommy Fuller was employed by the Cuyahoga Metropolitan Housing

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western
District of Michigan, sitting by designation.

[1]Fuller does not appeal the district court's dismissal of his due process, conspiracy,
and negligent hiring, training, supervision, and retention claims.

Authority ("CMHA") as a boilermaker. He was responsible for maintaining the boiler heating systems in some CMHA housing units. On January 3, 2003, at the conclusion of his shift, Fuller stopped at 2481 Morris Black Place, Unit G, in the CMHA housing units at Woodhill Estates, to use the restroom. Unit G is identified as a police mini-station, but it has been vacant since 1995, and is used by CMHA maintenance staff as a break room. According to Fuller, while he was using the restroom he heard some pounding on the door downstairs. When he came out of Unit G, Officers Thomas Burdyshaw and James Harris, two CMHA security officers, were running towards him with their guns drawn. The officers began questioning Fuller and then grabbed him, punched him, pulled him to the ground, sprayed him with pepper spray, and handcuffed him. Fuller was arrested and charged with assault. He was jailed for four days. On January 9, 2003, CMHA fired Fuller from the job he had held for nineteen years. On May 27, 2004, Plaintiff was acquitted of the criminal charge of assault on a police officer.

Fuller filed an initial action regarding these events on January 3, 2005. That action was dismissed without prejudice on August 30, 2005. Plaintiff filed the current action on August 30, 2006, against CMHA, CMHA's Board of Commissioners, CMHA's Executive Director George Phillips, and CMHA's police officers, Patrolman Thomas Burdyshaw, Patrolman James Harris, Sergeant Christopher Jakub, Chief Anthony Jackson, and John Doe training officers 1-20, alleging claims under 42 U.S.C. § 1983 and state law for: use of

2

excessive force; unreasonable search and seizure; denial of due process; deprivation of his right to liberty, health, safety, privacy, and welfare; conspiracy; intentional infliction of emotional distress; negligent hiring and retention; negligent training and supervision; and malicious prosecution.

In a series of carefully-considered and well-written opinions, the district court dismissed some of the defendants, dismissed some of Fuller's state law claims with prejudice, entered summary judgment for Defendants on Fuller's § 1983 and § 1985 claims, and dismissed Fuller's remaining state law claims without prejudice.[2] The issues on appeal are limited to the district court's entry of summary judgment on the § 1983 claims, its dismissal of the intentional infliction of emotional distress claim as to Defendant CMHA, and its dismissal of the malicious prosecution claim as to all Defendants.

## II. ANALYSIS

### A. § 1983 Claims

---

[2]In two opinions and orders dated January 11, 2007, the district court dismissed the claims against George Phillips and the CMHA Board of Commissioners as time-barred. (Dkt. Nos. 28, 29.) In an opinion and order dated January 25, 2007, the district court dismissed Plaintiff's malicious prosecution claim and Plaintiff's intentional infliction of emotional distress claim against Defendant CMHA. (Dkt. No. 31.) In an opinion and order dated March 30, 2007, the district court dismissed Plaintiff's claims for deprivation of the right to due process and for deprivation of the right to liberty, health, safety, privacy and welfare. (Dkt. No. 44.) In an opinion and order dated February 6, 2008, the district court entered summary judgement in favor of Defendants on Plaintiff's § 1983 claims of excessive force, unreasonable search and seizure, and conspiracy, and dismissed Plaintiff's remaining state law claims with prejudice. (Dkt. No. 69.)

The district court entered summary judgment in favor of Defendants on Fuller's § 1983 claims. The district court determined that Defendants Burdyshaw and Harris were entitled to summary judgment on Fuller's Fourth Amendment excessive force and search and seizure claims because Fuller failed to show that their conduct violated a constitutional right. *See Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity."). The district court determined that Defendants Jakub, Jackson, and CMHA were entitled to summary judgment because, in the absence of an underlying constitutional violation, Fuller could not state a supervisory liability or failure to train claim against them. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) ("A municipality cannot be held liable under § 1983 absent an underlying constitutional violation by its officers.").

On appeal, Fuller does not challenge the district court's recitation of the governing legal principles. Instead, Fuller claims that the entry of summary judgment in favor of Defendants must be reversed because the district court ignored its obligation to review the record in the light most favorable to Fuller, to accept Fuller's uncontroverted evidence as

4

true, and to draw all reasonable inferences in his favor.

"We review a district court's grant of summary judgment *de novo*." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).

Fuller contends that the district court failed to consider certain undisputed facts that were favorable to him, including evidence that he had a CMHA logo on his shirt and that Unit G had been used for years by CMHA maintenance personnel as a break room. The objective reasonableness of an officer's stop, seizure, or use of force, depends on what was known to the officer at the time he engaged in the conduct at issue. *Humphrey v. Mabry*, 482 F.3d 840, 848-49 (6th Cir. 2007). Accordingly, the omitted evidence would only be material to the district court's analysis if it was known to the officers. Although Fuller asserts that the officers knew or should have known these facts, Fuller did not present any evidence to support this assertion. Accordingly, Fuller has not shown that the evidence was material to the district court's analysis.

Fuller also contends that the district court improperly viewed the evidence in the light

most favorable to the Defendants rather than to him when it found that he was uncooperative, that he was fidgeting with his clothes, that he told the officers that if they touched him "it was on," and that he resisted the officers' attempt to place him in handcuffs. The evidence at issue is contained in Defendants' affidavits. Neither Fuller's deposition testimony nor his affidavit contained any evidence that was inconsistent with Defendants' description of Fuller's behavior. Because Fuller did not present any evidence to contradict the officers' statements regarding his behavior, there was no material dispute regarding this evidence and the district court did not err in relying upon it.

Finally, Fuller contends that the court disregarded the testimony of Tonya Roberson regarding the force used. Ms. Roberson's testimony reveals that she did not see what precipitated the officers' actions. Accordingly, she was not in a position to evaluate the objective reasonableness of the force used.

Upon *de novo* review of the record, we conclude that the district court, in an unusually thorough and well-written opinion, properly drew all reasonable inferences in Fuller's favor to the extent supportable by the record, and did not improperly weigh the evidence or overlook any genuine issues of material fact. We affirm the entry of summary judgment in favor of Defendants on Fuller's § 1983 claims for the reasons stated in the district court's thorough and well-reasoned opinion.

**B. Intentional Infliction of Emotional Distress Claim Against CMHA**

The district court dismissed Fuller's intentional infliction of emotional distress claim against CMHA because CMHA is a political subdivision that is entitled to immunity under the Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02(A)(1), and because there is no exception to immunity protecting political subdivisions from liability for the intentional infliction of emotional distress claims of its employees. In support of this conclusion the district court cited *Hubbard v. Canton City School Board of Education*, 780 N.E.2d 543 (Ohio 2002), and *Wilson v. Stark County Department of Human Services,* 639 N.E.2d 105 (Ohio 1994).

On appeal, Fuller contends that the district court erred in dismissing his intentional infliction of emotional distress claim on immunity grounds because the municipal immunity statute does not apply to claims by an employee against his employer that arise out of the employment relationship. *See* Ohio Rev. Code § 2744.09(B) (providing that the immunity statute does not apply to "[c]ivil actions by an employee . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision"). Fuller notes that the district court did not address this statutory exception, and that neither *Hubbard* nor *Wilson*, the cases cited by the district court, addressed claims by municipal employees against their employers.

We review *de novo* a district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Gunasekera v. Irwin*, 551 F.3d 461, 465-66 (6th Cir.

2009). "We construe the complaint in the light most favorable to the nonmoving party and accept all well-pleaded factual allegations as true to determine whether the moving party is entitled to judgment as a matter of law." *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) (citing *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

It appears that Ohio courts are divided on the question of whether municipalities are immune from intentional-tort claims brought by their employees. *Compare Nagel v. Horner*, 833 N.E.2d 300, 304-06 (Ohio Ct. App. 2005) (holding that a municipality is not immune from intentional tort claims that arise out of the employment relationship), *with Terry v. Ottawa Co. Bd. of Mental Retardation & Developmental Disabilities*, 783 N.E.2d 959, 964 (Ohio Ct. App. 2002) (holding that an employer's intentional tort is not excepted under § 2744.09(B) from the statutory grant of immunity to political subdivisions because it does not arise out of the employment relationship), *and Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 701 (N.D. Ohio 2005) (same), and the cases they cite. "In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)). "If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue." *Meridian*, 197 F.3d at

1181. In this case we conclude that it is not necessary to determine how the Ohio Supreme Court would resolve the issue of municipal immunity from intentional-tort claims brought by employees because Fuller's claim does not fall within the scope of § 2744.09(B).

There is no dispute § 2744.09(B) does not exempt all claims by municipal employees against their employers from immunity. It only applies to claims that "arise[] out of the employment relationship between the employee and the political subdivision." Ohio Rev. Code § 2744.09(B). *See Nungester v. Cincinnati*, 654 N.E.2d 423, 427 (Ohio Ct. App. 1995) (holding that the plaintiff city police officer was not entitled to rely on § 2744.09(B) to avoid immunity because the rights he was asserting in his claims of false arrest and malicious prosecution were purely personal rights that were not created by or dependent upon the existence of his employment relationship with the city); *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 697 (N.D. Ohio 2006) (holding that the city was immune from liability on the plaintiff police officer's malicious prosecution and abuse of process claims because they did not arise out of the employment relationship). The "arises out of" language means that the § 2744.09(B) exemption from immunity does not apply unless the claim is causally connected to the employment relationship.

Fuller alleged in his complaint that at the time of his arrest he was in the Morris Black Place neighborhood to equip the boiler room with supplies for use over the weekend. Thus, he contends that he was arrested while he was engaged in work for his employer. However,

9

the relevant consideration under § 2744.09(B) is not whether the claim arose while the municipal employee was conducting his employer's business, but whether the rights he is asserting arose out of that employment relationship. Upon review of Fuller's complaint, we find that the rights he is asserting arose not out of his employment relationship with CMHA, but out of his arrest. The rights he is asserting are "purely personal rights" that in no way are "created by or dependent upon" the existence of Fuller's employment relationship with the city. *See Lentz*, 410 F. Supp. 2d at 697 (quoting *Nungester*, 654 N.E.2d at 427). On *de novo* review, we conclude that Fuller's intentional infliction of emotional distress claim against CMHA is not causally connected to his employment relationship. Accordingly, the § 2744.09(B) exception to the immunity statute does not apply, and the district court correctly dismissed the intentional infliction of emotional distress claim against CMHA on the basis of its immunity under Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02(A)(1).

### C. Malicious Prosecution Claim

The district court dismissed Plaintiff's malicious prosecution claim with prejudice because it was time-barred. On appeal, Fuller does not contest the district court's finding that he filed this action well beyond the one-year limitations period for malicious prosecution

claims.[3]   Instead, he contends that the district court erred in dismissing his malicious

prosecution claim because the Ohio saving statute, Ohio Rev. Code § 2305.19, applied to

save his claim from the running of the statute of limitations.

By its terms the Ohio saving statute allows a plaintiff who voluntarily dismisses an

action after the statute of limitations has run to refile the action within one year of the

dismissal.  Ohio Rev. Code § 2305.19.[4]  The saving statute has also been construed to save

a plaintiff's action otherwise barred by the statute of limitations "'when the original suit and

the new action are substantially the same.'" *Stone v. N. Star Steel Co.*, 786 N.E.2d 508, 512

(Ohio Ct. App. 2003) (quoting *Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 433 N.E.2d

187, 189 (Ohio 1982)).  "A new complaint is substantially the same as the original complaint

for purposes of the saving statute when the new complaint differs only to the extent that it

---

[3]Fuller does not challenge the district court's findings that the statute of limitations for malicious prosecution claims is one year, Ohio Rev. Code § 2305.11(A), that his malicious prosecution claim accrued on June 3, 2004, when he was acquitted, and that he did not file a malicious prosecution claim until August 30, 2006.

[4]The Ohio saving statute provides, in pertinent part:

(A) In any action that is commenced . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. . . .

Ohio Rev. Code § 2305.19.

adds new recovery theories based upon the same factual occurrences stated in the original complaint." *Id.* "When determining whether the new complaint and the original complaint are substantially the same, a court must determine whether the allegations in the first action gave the defendant fair notice of the type of claims asserted in the second action." *Id.* "As a matter of policy, the saving statute is to be liberally construed so that controversies are decided upon important substantive questions rather than upon technicalities of procedure." *Id.*

Fuller contends that although he did not allege a malicious prosecution claim in his original complaint, his original complaint alleged all of the facts necessary to support each element of a malicious prosecution claim, and was sufficient to give Defendants fair notice of the malicious prosecution claim. We disagree.

Fuller's original complaint alleged six claims: (1) use of excessive force; (2) unreasonable search and seizure; (3) conspiracy; (4) intentional infliction of emotional distress; (5) negligent hiring and retention; and (6) negligent training and supervision. It did not make a claim for malicious prosecution, nor did it allege that the prior proceedings lacked probable cause, an essential element of a malicious prosecution claim.[5]

---

[5]The elements of a malicious prosecution claim are: (1) malicious institution of prior proceedings against the plaintiff; (2) lack of probable cause for the filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 662 N.E.2d 9, 13 (Ohio 1996).

"The tort of malicious criminal prosecution compensates the plaintiff for the damage to dignity and reputation caused by false accusation of a crime." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990), *overruled in part on other grounds by Robb*, 662 N.E.2d at 13-14. Although Fuller's original complaint included allegations that he had been indicted, tried, and acquitted on the assault charges, the emphasis of Fuller's factual allegations was on the circumstances of his arrest rather than on the allegedly false accusation of a crime. By contrast, Fuller's second complaint incorporated new allegations that the defendants maliciously instituted the criminal action against him without probable cause. The facts alleged in the new complaint are not substantially the same as the original complaint. The original complaint was not sufficient to give Defendants fair notice that the second complaint would include a malicious prosecution claim. We agree with the district court that the saving statute does not bring Fuller's malicious prosecution claim within the applicable limitations period. Accordingly, we affirm the district court's dismissal of the malicious prosecution claim as time-barred.[6]

## III. CONCLUSION

The district court's entry of summary judgment on the § 1983 claims, its dismissal of the intentional infliction of emotional distress claim against CMHA, and its dismissal of the malicious prosecution claim are **AFFIRMED**.

---

[6]We also note that Fuller's malicious prosecution claim against CMHA is also barred under the Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02(A)(1). *See supra* Part II(B).