# United States Court of Appeals

### For the Eighth Circuit

_____

No. 10-3798

_____

William Royster

*Plaintiff - Appellant*

v.

Tommy Nichols

*Defendant - Appellee*

James Corwin

*Defendant*

Kansas City Board of Police Commissioners

*Defendant - Appellee*

Karl Zobrist; Terry Brady; Mark Thompson; Mark Funkhouser; James Wilson

*Defendant*s

George D. Rosenkoetter; Kona Macadamia, Inc., doing business as Kona Grill

*Defendants - Appellees*

Highwoods Properties, Inc.

*Defendant*

Chesley Brown International, Inc., doing business as Plaza Security

*Defendant - Appellee*

John Doe; William Holbrook, Plaza Security Supervisor

*Defendant*s

———————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

———————

Submitted: June 12, 2012
Filed: October 30, 2012 **(CORRECTED 10/31/12)**

———————

Before BYE, BEAM, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

William Edward Royster filed an eight-count second amended complaint against, *inter alia*, Kansas City, Missouri Police Officer Tommy Nichols; the Kansas City Board of Police Commissioners ("the Board"); Kona Macadamia, Inc. d/b/a Kona Grill ("Kona Grill"); George D. Rosenkoetter; and Chesley Brown International, Inc. d/b/a Plaza Security ("Plaza Security"),[1] asserting a variety of federal and state claims arising out of his arrest at the Kona Grill. The district court[2]

———————

[1]"On August 26, 2010, pursuant to a Stipulation of Dismissal filed by the parties, the [district] [c]ourt dismissed plaintiff's claims against Highwoods Properties, Inc.[,] and on November 3, 2010, the [district] [c]ourt granted plaintiff's Motion to voluntarily dismiss defendants James Corwin and William Holbrook." *Royster v. Nichols*, No. 08–0141–CV–W–FJG, 2010 WL 5067605, at *2 (W.D. Mo. Dec. 6, 2010) (unpublished).

[2]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

-2-

granted summary judgment to all the defendants. Royster appeals, arguing that the district court improperly weighed facts. We affirm.

## I. *Background*

"As this is an appeal from the grant of summary judgment, we review and recite the facts in the light most favorable to [Royster] as the non-moving party." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 814 n.3 (8th Cir. 2010).

On February 28, 2006, Royster went to the Kona Grill between 3:15 p.m. and 3:30 p.m. Upon his arrival, he handed a Kona Grill employee his American Express credit card to open a tab. While at the Kona Grill, Royster and a friend ordered 15 Gray Goose vodka drinks, totaling $156.00 with tax.

Around 8:00 p.m., Rosenkoetter, the Kona Grill manager on duty, asked Royster to leave the establishment because of Royster's unacceptable conduct. According to Rosenkoetter, he contacted Plaza Security stating that he "need[ed] someone escorted out" because Royster was "refusing to leave the restaurant." Before security arrived, Royster left the Kona Grill without reclaiming his American Express credit card and without signing a credit-card receipt. Plaza Security sent Officer Nichols, a Kansas City, Missouri police officer working off-duty for Plaza Security, in response to the call. According to Officer Nichols, Plaza Security "[d]ispatch advised of a disturbance, a party refusing to pay." Officer Nichols testified that, upon his arrival at the Kona Grill, he "was told [by Rosenkoetter] that the parties were being told to leave from an inappropriate comment and that they refused to pay their tab."[3]

---

[3]In his suggestions in opposition to Officer Nichols's motion for summary judgment, Royster deemed this fact "uncontroverted," stating that "that was Officer Nichols's testimony." "Because [Royster] did not present any evidence to contradict [Officer Nichols's] statements . . . , there [is] no material dispute regarding this evidence." *Fuller v. Cuyahoga Metro. Housing Auth.*, 334 F. App'x 732, 735 (6th Cir. 2009) (unpublished).

Shortly after leaving the Kona Grill, Royster returned to get his American Express credit card. Viewing the facts in the light most favorable to Royster—as we must—the following events then occurred. Upon Royster's return to the Kona Grill, "there were two Kansas City police officers dressed in Kansas City police officer's uniform[s] and Plaza Security that walked into the [Kona] Grill as [Royster] was approaching it." Then, "the Kansas City police officers and the Plaza Security came back out on to the sidewalk accompanying the manager and that's when [everyone was] together on the sidewalk." As the officers and Rosenkoetter "were walking out of the [Kona] Grill onto the sidewalk in [Royster's] direction," Rosenkoetter pointed at Royster and said, "That's the guy." When the officers and Plaza Security approached Royster, he asked what was wrong. Then, either Rosenkoetter or one of the police officers "brought up that [Royster] had stolen" something. Royster asked, "What did I steal?" Officer Nichols then responded that Royster "didn't pay [his] bar tab, that [he] didn't pay the bill." In response, Royster said, "Well[,] [Rosenkoetter's] got my card."

Thereafter, Rosenkoetter went back into the Kona Grill and asked the server to close Royster's tab. To close the tab, the server swiped Royster's credit card through the credit-card machine. The credit-card receipt did not show an itemized receipt of the drinks purchased. The server's normal practice was to print the "itemized receipt along with [the] credit[-]card receipt," but she did not "remember . . . 100%" whether she had done so that evening. After the server closed out the tab and printed off the credit-card receipt, she handed the card, the receipt, and all other items back to Rosenkoetter. Rosenkoetter then exited the Kona Grill with "a fistful of what appeared to be receipts" and Royster's credit card. Royster then "reached across through the police office[r] toward [Rosenkoetter] and . . . grabbed [his] card back." Royster testified that after he obtained his card, Officer Nichols told Royster "to sign the receipts." In response, Royster told Officer Nichols that he "hadn't seen the receipts, that [he] do[es]n't just sign blindly something [he] ha[s]n't looked at." Royster informed Officer Nichols, "I'm not going to sign something that I haven't looked at."

According to Rosenkoetter's testimony, which Royster credits,[4] Officer Nichols then responded, "You need to sign this bill . . . or you're going to be arrested for theft of restaurant services."[5] At some point during the exchange, Officer Nichols had asked Rosenkoetter, "Will you prosecute if he refuses to pay the tab?" Rosenkoetter had responded, "Yes." Officer Nichols had then asked Rosenkoetter, "Will you sign a General Ordinance Summons?" Rosenkoetter again replied, "Yes."[6] According to the Joint Stipulation of Uncontroverted Facts ("Stipulation"), Rosenkoetter did, in fact, "sign[] the general ordinance summons as the complaining party."

After Royster again informed Officer Nichols that he was "not signing anything [he] ha[s]n't seen," Officer Nichols replied, "Then you're under arrest." In summary, both parties admitted the following facts in their Stipulation:

11.    Officer Tommy Nichols asked that William Royster sign his credit card charge.

12.    William Royster did not sign the charge for the $156.00 bill for Kona Grill's restaurant services and product.

13.    Officer Tommy Nichols arrested William Royster for a municipal violation of failing to pay for restaurant services which totaled $156.00.

---

[4]In his statement of the facts in his appellate brief, Royster cites *Rosenkoetter's testimony* regarding what Officer Nichols said to Royster in response to Royster stating that he would not sign something that he had not looked at.

[5]Royster testified that Officer Nichols responded, "Are you going to sign that or not?"

[6]Again, in his statement of the facts, Royster credits Officer Nichols's recitation of the facts regarding his exchange with Rosenkoetter about what Rosenkoetter would do if Royster did not sign the receipt.

When Officer Nichols began handcuffing Royster's hands behind his back, Royster informed Officer Nichols that he had "service-connected injuries from [his] Naval service from an ejection that [he] sustained." He told Officer Nichols that he had "a shoulder injury and a back injury." Royster further requested that Officer Nichols "not handcuff [Royster] behind [his] back" but instead to "please handcuff [Royster] in front." Officer Nichols handcuffed Royster behind his back despite Royster's request that he be handcuffed in front due to an old shoulder injury.

The Board establishes the policies and procedures for officers to follow in the operations of the Kansas City Police Department (KCPD). When Officer Nichols arrested Royster, he was dressed in a KCPD uniform. The handcuffs and the gun that Officer Nichols carried were "Police Department issue." Off-duty officers like Officer Nichols are bound by all KCPD policies. KCPD policy provides, in relevant part, that

[w]hen an officer places a person in handcuffs, the officer will:

* * *

d.      Make every attempt to place handcuffs behind the arrest[ee]'s back. If the arrest[ee] has a medical or physical condition that would preclude them from being handcuffed behind their back, they will be handcuffed (double-locked) in front, and a wagon will be requested to transport the arrest[ee]. Once the arrest[ee] has been transported to the Detention Unit at Headquarters, the officer will inform detention personnel that the arrest[ee] is handcuffed in front and the reason for this action.

The charges against Royster for theft of restaurant services were eventually dismissed, and Royster then brought the instant suit against, *inter alia*, Officer Nichols, the Board, Plaza Security, the Kona Grill, and Rosenkoetter. In his second amended complaint, Royster brought § 1983 claims against Officer Nichols, the Board, Plaza Security, the Kona Grill, and Rosenkoetter. In Count I, he alleged that Nichols and Rosenkoetter "knew or should have known that they had no probable

cause to seize and arrest Royster, or to cause his arrest," resulting in an "unconstitutional application of excessive force and . . . an unreasonable seizure in violation of the Fourth Amendment."[7] In Count III,[8] Royster alleged that the Board violated his constitutional rights by failing to or inadequately (1) supervising officers regarding the appropriate use of force, (2) training and supervising officers "in the techniques of properly conducting criminal investigations," (3) training and supervising officers regarding their "obligation to truthfully report occurrences rather than to falsify information to cover up misconduct," and (4) disciplining officers who violate the law. Count III also alleged that the Board had "inadequate policies, practices, customs[,] or procedures pertaining to . . . [c]overing up of police misconduct by falsifying and fabricating evidence." Similarly, Count IV claimed that the Kona Grill and Plaza Security had violated Royster's constitutional rights by failing to or inadequately (1) training and supervising its employees regarding investigatory techniques and customer complaints, (2) training and supervising its employees regarding their "obligation to truthfully report occurrences rather than to falsify information to cover up misconduct," and (3) disciplining employees who violate the law during an investigation. Royster also alleged that the Kona Grill and Plaza Security had "inadequate policies, practices, customs[,] or procedures pertaining to . . . [c]overing up of misconduct by falsifying and fabricating evidence."

In addition to the § 1983 claims, Royster also brought the following state-law claims against Officer Nichols, Plaza Security, the Kona Grill, and Rosenkoetter: (1)

---

[7]He also alleged that "[t]he [d]efendants' actions . . . deprived [him] of his right to substantive due process and his right to be free from cruel and unusual punishment, in violation of the Fifth, Eighth[,] and Fourteenth Amendments of the United States Constitution."

[8]In Count II, Royster alleged a conspiracy between Officer Nichols and Rosenkoetter to deprive Royster of his constitutional rights. The district court determined that Royster offered no evidence in support of his claim and that a conspiracy charge cannot succeed where there is no underlying civil rights violation. Royster has not challenged this determination on appeal.

false arrest and unlawful imprisonment (Count V); (2) an alternative claim for negligence resulting in wrongful arrest and detention (Count VI); (3) malicious prosecution (Count VII); and (4) the tort of outrageous conduct (Count VIII).[9]

All of the defendants moved for summary judgment on all claims, which the district court granted. *See Royster*, 2010 WL 5067605; *Royster v. Nichols*, No. 08–0141–CV–W–FJG, 2011 WL 2011479 (W.D. Mo. May 23, 2011) (unpublished).

## II. *Discussion*

On appeal, Royster argues that the district court erroneously granted summary judgment on all of his claims to Officer Nichols, the Board, Plaza Security, the Kona Grill, and Rosenkoetter. According to Royster, the district court improperly weighed the facts in determining that all of his claims failed.

"This court reviews a district court's grant of summary judgment de novo and may affirm the district court on any basis supported by the record." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1032 (8th Cir. 2012).

### A. *Officer Nichols*
#### 1. *Wrongful Arrest*

According to Royster, Officer Nichols lacked probable cause to arrest him for a simple civil dispute between a customer and a proprietor over a bill for restaurant services. Royster contends that, prior to his arrest, Officer Nichols did not allow Royster to review the credit card charge and the check even after Royster advised him that he would not sign a receipt that he had not seen. He concludes that, under the totality of the circumstances, Officer Nichols lacked probable cause to believe that Royster had actually committed the crime of theft of restaurant services. Royster

---

[9]Our review of the record reveals that Royster has apparently abandoned this claim, and he has not raised it as an issue on appeal.

contends that Officer Nichols based his decision to arrest solely on Rosenkoetter's complaint.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (quotation and citation omitted). We must determine, as a matter of law, whether Officer Nichols "had probable cause at the time of [Royster]'s arrest." *Id*. "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id*. (quotation and citation omitted). In determining whether probable cause existed at the time of the arrest, "we look at the totality of the circumstances as set forth in the information available to the officer[] at the time of arrest." *Id*. (quotation and citation omitted). "As probable cause is determined at the moment the arrest was made, any later[-]developed facts are irrelevant to the probable cause analysis for an arrest." *Id*. (quotation and citation omitted). In evaluating whether probable cause existed for Royster's arrest, "we determine from the totality of the circumstances whether a prudent person would believe [Royster] had committed or was committing a crime, giving [Officer Nichols] substantial latitude in interpreting and drawing inferences from factual circumstances." *Id*. at 817 (quotation and citation omitted).

Generally, an officer is "entitled to rely on the veracity of information supplied by the victim of a crime." *Id*. at 817 (quotation and citation omitted). "In considering information given by a victim of a crime, an officer need not conduct a 'mini-trial' before effectuating an arrest although he cannot avoid 'minimal further investigation' if it would have exonerated the suspect." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (holding that no probable cause existed where officer only spoke with suspect for 20 seconds, ignored exculpatory evidence, and disregarded eyewitness account)). "When an officer is faced with conflicting information that cannot be immediately resolved, however, he may have arguable probable cause to arrest a suspect." *Id*. Although "[i]t

is usually not possible for an officer to be certain about a suspect's state of mind at the time of a criminal act, . . . he need not rely on an explanation given by the suspect." *Id*. at 524 (internal citations omitted). Thus, the officer may "rely on the implications of the information known to him when assessing whether a suspect possessed the state of mind required for the crime." *Id*. (quotation and citation omitted). Ultimately, "Fourth Amendment analysis . . . turns on what a reasonable officer could have believed under the circumstances, not on the state of mind or subjective beliefs of the[] particular officer[]." *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011).

"Viewing the record and drawing all reasonable inferences in the light most favorable to [Royster], while simultaneously viewing the facts from the perspective of a reasonable officer on the scene,[10]" *Montoya v. City of Flandreau*, 669 F.3d 867,

---

[10]The dissent fails to recognize this court's dual obligation not only to view the facts in the light most favorable to Royster but also to view the facts from the perspective of a reasonable officer on the scene. The dissent accuses the majority of "fail[ing] to consider certain undisputed facts that were favorable to [Royster]." *Fuller*, 334 F. App'x at 734. These facts include that (1) no one at the Kona Grill asked Royster to sign a receipt prior to Officer Nichols's arrival and that (2) Royster was presented with a credit-card receipt without an itemization in violation of the Kona Grill's normal practice. *See infra* at 21. But "[t]he objective reasonableness of an officer's stop, seizure, or use of force, depends on what was *known to the officer* at the time he engaged in the conduct at issue." *Id*. (emphasis added). "Accordingly, the omitted evidence would only be material to the . . . analysis if it was known to [Officer Nichols]." *Id*. There is no evidence in the record that Officer Nichols's knew that "Royster's server at Kona [Grill] testified that her . . . normal practice was for a server to print an 'itemized receipt along with [the] credit[-]card receipt' to be presented to the customer but she did not 100 percent remember if she had done so at the time of this . . . event." *See infra* at 21 (third and fourth alterations in original). Put another way, Royster has presented no evidence that Officer Nichols *knew* that *Kona Grill*'s "normal practice"—as termed by the dissent—was to present a credit-card receipt with an itemization. *See infra* at 21. Nor has Royster shown that Officer Nichols *knew* that "no demand for payment was made [or that no] . . . tab [was] prepared and presented until Royster returned for his credit card." *See infra* at 21.

871 (8th Cir. 2012) (quotation and alteration omitted), we conclude that Officer Nichols had probable cause to arrest Royster. First, Royster has not controverted Officer Nichols's testimony that Plaza Security informed him that there was a "disturbance" at the Kona Grill involving "a party refusing to pay" or that Rosenkoetter informed him upon his arrival that the parties were asked to leave the Kona Grill because of "an inappropriate comment" and a "refus[al] to pay their tab."*See Fisher*, 619 F.3d at 817 ("Undisputed facts show that Christeson called the Raymore police and told them that 'a girl at the service desk [is] trying to cash some fake money orders.'" (alteration in original)).

Second, Rosenkoetter identified Royster to Officer Nichols as the individual who had not paid his bill, stating, "That's the guy." *See Fisher*, 619 F.3d at 817 ("Christeson confidently identified Fisher to Sergeant Loney as the person at the front desk who had brought the fake money orders.").

Third, Officer Nichols, by Royster's own recitation of the facts, *did* speak with both parties regarding the dispute. Officer Nichols saw that Rosenkoetter was carrying—in Royster's own words—"receipts" out of the Kona Grill and discussed with Rosenkoetter whether he would prosecute and sign a General Ordinance Summons if Royster "refuses to pay the tab." Officer Nichols informed Royster of the complaint against him—that he did not pay his bill. When Officer Nichols told Royster "to sign the receipts," Royster told Officer Nichols, "I'm not going to sign something that I haven't looked at." In the Stipulation, all parties agree that Royster "did not sign the charge for the $156.00 bill for Kona Grill's restaurant services and product."

We conclude that Royster's refusal to "sign the charge for the $156.00 bill"—even if Royster correctly believed that he did not have to sign—gave Officer

Therefore, Royster "has not shown that the evidence [is] material to . . . [the] analysis." *Fuller*, 334 F. App'x at 734.

-11-

Nichols probable cause to arrest Royster for theft of restaurant services. Officer Nichols "was entitled to rely on what he was told by [Rosenkoetter]," i.e., that Royster had not paid his bill. *Borgman*, 646 F.3d at 523. Moreover, Royster confirmed to Officer Nichols that he was not going to sign the charge. As the district court noted, "[i]t is irrelevant for the probable cause analysis, that the bill was eventually paid by American Express." *Royster*, 2010 WL 5067605, at *10. The relevant inquiry is "whether, viewing the evidence in [Royster's] favor, [Officer Nichols] . . . had probable cause *at the time of the arrest*; that is, whether the facts and circumstances would have led to a reasonable conclusion that a crime had been committed." *Fisher*, 619 F.3d at 817 (emphasis added). At the time of the arrest, a reasonable officer would have known that Kansas City, Missouri ordinance § 50-106 provides, in relevant part:

    (b)    A person commits the ordinance violation of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit.

    (c)    Evidence of the following is admissible in any criminal prosecution under this section on the issue of the requisite knowledge of belief of the alleged stealer:

                                \* \* \*

    (2)    That he left the hotel, *restaurant*, inn or boardinghouse *with the intent not to pay* for property or services.

(Emphases added.)

Again, viewing the facts in the light most favorable to Royster, a reasonable officer would know that (1) § 50-106 makes it a crime to leave a restaurant with the intent not to pay, (2) Rosenkoetter identified Royster as the individual who had not paid his bill, and (3) Royster would not and did not, for whatever reason, sign the

-12-

charge for the $156 bill. Under the totality of the circumstances, we conclude that Officer Nichols had probable cause to arrest Royster for theft of restaurant services.[11]

[11]Royster cites several cases purportedly supporting his argument that a dispute over a restaurant bill is civil in nature and does not give rise to probable cause to arrest. *See, e.g.*, *Stevens v. Rose*, 298 F.3d 880, 884 (9th Cir. 2002) (holding that plaintiff's Fourth Amendment rights were violated by deputy sheriff and other officers who arrested plaintiff while they were seeking a set of car keys involved in a civil dispute; deputy knew that keys were subject of a civil dispute such that there was no probable cause for arrest); *Allen v. City of Portland*, 73 F.3d 232, 237–38 (9th Cir. 1995) (holding that police officer did not have probable cause to arrest restaurant patron for theft of services based on information that patron had eaten at restaurant, that patron's husband offered coupon to pay for meal, that restaurant claimed coupon was invalid, and that family left restaurant and also holding that "civil dispute[s] cannot give rise to probable cause"); *Peterson v. City of Plymouth*, 60 F.3d 469, 476–77 (8th Cir. 1995) (holding that police officer lacked probable cause to swear out complaint charging landlord with felony theft in connection with dispute over ownership of snowblower that former tenant left in garage of rental home where the officer had in his possession a tape recording of confrontation between tenant and landlord indicating that landlord believed that snowblower was abandoned and thus that necessary criminal intent was lacking and that the matter was a civil dispute); *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1347 (7th Cir. 1985) (stating that, on remand of § 1983 action against arresting deputies arising out of warrantless entries into plaintiffs' campers to effectuate plaintiffs' arrests on charges of theft of services from restaurant, it would not be necessary as to the probable-cause issue to submit a separate question concerning whether plaintiffs consented to the entries; the consent issue would simply be part of the overall probable cause determination, including a determination as to whether responses to deputies' questions were coerced).

But none of these cases cited a specific ordinance—such as in the present case—prohibiting theft of restaurant services. For example, in *Allen*, the officer acknowledged that he "knew absolutely [that he] did not have the right to take [the plaintiff] to jail for that particular charge." *Allen*, 73 F.3d at 236 (emphasis omitted). By contrast, § 50-106 gave Officer Nichols a legal basis for the arrest. And, although *Allen* cited *Peterson* in support of its conclusion "that a civil dispute cannot give rise to probable cause to arrest," *id*. at 237, we have explained that "*Peterson* does not stand for the blanket proposition that civil disputes always negate the elements of

## 2. *Excessive Force*

Royster argues that Officer Nichols cuffed Royster's hands behind his back despite Royster's request that Officer Nichols cuff him in the front because of an old back and shoulder injury. Royster alleges that he was injured as a result of the handcuffing, meaning that he has a viable claim for excessive force against Officer Nichols.

"All claims that law enforcement officers have used excessive force, whether deadly or not, in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard." *Nance v. Sammis*, 586 F.3d 604, 609–10 (8th Cir. 2009). "Not every push or shove violates the Fourth Amendment, but force is excessive when the officers' actions are not objectively reasonable in light of the facts and circumstances confronting them." *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009) (quotations, alteration, and citation omitted). "The key question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Nance*, 586 F.3d at 610 (quotations and citation omitted). "Objective reasonableness depends on the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Rohrbough*, 586 F.3d at 586 (quotations and citations omitted).

"A *de minimis use of force* is insufficient to support a claim, and it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding

criminal intent." *Anderson v. Cass Cnty., Mo.*, 367 F.3d 741, 745–46 (8th Cir. 2004). "[A] probable cause determination is fundamentally a fact-specific inquiry." *United States v. Khounsavanh*, 113 F.3d 279, 285 (1st Cir. 1997). Under the facts of the present case, as explained *supra*, we find that Officer Nichols did have probable cause to arrest Royster for theft of restaurant services.

-14-

*de minimis* use of force." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) (internal citation omitted). "The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Id*. However, the possibility exists for a plaintiff "to prove an excessive use of *force* that caused only a minor *injury*." *Id*.

"The degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." *Id*. This is because some people are "thicker-skinned than others, and the same application of force will have different effects on different people." *Id*. Therefore, "[t]he rule . . . focus[es] . . . on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id*. In *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010), the Supreme Court "reinforce[d] two propositions that are relevant [to an excessive-force claim under the Fourth Amendment]: 'The extent of the injury may . . . provide some indication of the amount of force applied,' but '[i]njury and force . . . are only imperfectly correlated.'" *Id*. at 906 n.3 (quoting *Wilkins*, 130 S. Ct. at 1178) (third, fourth, and fifth alterations in original).

Here, KCPD policy provides that an officer should "[m]ake every attempt to place handcuffs behind the arrest[ee]'s back." "[H]andcuffing [of an arrestee's] hands behind his back [is] a routine police procedure." *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996). "Standard police practice called for cuffing an arrestee's hands behind [his] back and [Officer Nichols's] decision not to deviate from this practice was a judgment call, pure and simple." *Calvi v. Knox Cnty*, 470 F.3d 422, 428 (1st Cir. 2006). "Although . . . handcuffing a suspect behind the back in the face of a severe and obvious medical injury [may] constitute[] excessive force, the evidence does not support the assertion that [Royster's] arm injury was obvious." *Blosser v. Gilbert*, 422 F. App'x 453, 459 (6th Cir. 2011) (unpublished) (quotation and internal citation omitted). Nor has Royster presented evidence "that his injury was visible." *Id*. Instead, viewing the facts in the light most favorable to Royster, he only *informed* Officer Nichols that he had a preexisting injury.

-15-

Therefore, based on our review of the record, "[t]he aggravation of [Royster's] old injury was not attributable to the *excessive* component of the force used. Rather the aggravation of [Royster's] old shoulder injury was claimed to have been caused by handcuffing his hands behind his back, a routine police procedure." *Dunn*, 79 F.3d at 403 (emphasis added). Accordingly, the district court correctly granted summary judgment to Officer Nichols on Royster's excessive-force claim.

### 3. *State-law Claims*

Royster brought three state-law claims against Officer Nichols: (1) unlawful imprisonment, (2) negligence resulting in wrongful arrest, and (3) malicious prosecution. On appeal, Royster argues that "[b]ecause there is evidence that [Officer] Nichols'[s] arrest of Royster was without probable cause, all of the state[-]law claims are viable against [Officer Nichols]."

We hold that all of these claims fail as a matter of law because Officer Nichols had probable cause to arrest Royster. *See Gibbs v. Blockbuster, Inc.*, 318 S.W.3d 157, 170 (Mo. Ct. App. 2010) ("[N]o action for false imprisonment may be maintained for an arrest which is lawful, *no matter at whose instigation nor for what motive the arrest was made. If the arrest of the plaintiff was lawful, an action for false arrest will not lie, and it can make no difference at whose instigation it was made or what the motive was*. This must be so in reason, for there can be no trespass where the arrest is by warrant of law." (quotations and internal citations omitted) (emphases added)); *Bramon v. U-Haul, Inc.*, 945 S.W.2d 676 (Mo. Ct. App. 1997) (explaining that because "[n]egligent causation of arrest claims are not intentional torts," the plaintiff must prove, *inter alia*, "negligent discharge [of the] duty [of care]" (quotation and citation omitted)); *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 807 (Mo. 1984) (en banc) ("A person suing on a theory of malicious prosecution must plead and prove . . . the want of probable cause for the prosecution . . . .").

## B. *Plaza Security and the Board*

Royster argues that Plaza Security and the Board are vicariously liable for Officer Nichols's unlawful seizure and detention of his person and liable pursuant to 42 U.S.C. § 1983 for failure to train and supervise.

Even assuming that Plaza Security is a state actor for § 1983 purposes, we hold that Royster's claims against Plaza Security and the Board fail as a matter of law. First, "respondeat superior is inapplicable to claims under 42 U.S.C. § 1983." *Bell v. Kan. City Police Dep't*, 635 F.3d 346, 347 (8th Cir. 2011) (per curiam). Second, we have already determined that Officer Nichols's did not violate Royster's constitutional rights; therefore, Royster's "failure to train and failure to supervise claims . . . [can]not be sustained absent an underlying constitutional violation by the officer." *Sitzes v. City of W. Memphis Ark.*, 606 F.3d 461, 470–71 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* failure to train municipal liability.")).[12]

---

[12]Royster also brought state-law claims against Plaza Security. Before the district court, Royster "state[d] that Count V, the unlawful imprisonment count [wa]s no longer being pursued." *Royster*, 2010 WL 5067605, at *7. The district court granted summary judgment to Plaza Security on Royster's claims of malicious prosecution and negligence resulting in wrongful arrest and detention. *Id*. Even assuming that Plaza Security could be vicariously liable for Officer Nichols's actions as to Royster's state-law claims, those claims necessarily fail because Officer Nichols had probable cause to arrest Royster. *See* Part II.A.3.

C. *Kona Grill and Rosenkoetter*

In Count I, Royster alleged that Officer Nichols and Rosenkoetter "knew or should have known that they had no probable cause to seize and arrest Royster, or to cause his arrest," resulting in an "unconstitutional application of excessive force and . . . an unreasonable seizure in violation of the Fourth Amendment." In Count IV, Royster claimed that Plaza Security had failed to train and supervise its employees. Finally, in Counts V, VI, and VII, Royster brought state-law claims against the Kona Grill and Rosenkoetter. Royster argues that the district court erroneously granted summary judgment to the Kona Grill and Rosenkoetter on all his § 1983 claims. According to Royster, "[b]ecause there was a lack of probable cause for [his] arrest pursuant to [his] evidence, [the Kona Grill and Rosenkoetter] are subject to liability on all counts." He also argues that the district court erred in granting summary judgment to the Kona Grill and Rosenkoetter on his state-law claims.

We hold that all of Royster's claims against the Kona Grill and Rosenkoetter fail as a matter of law. First, assuming that Rosenkoetter and the Kona Grill acted under color of state law, we have already concluded that Officer Nichols *did* have probable cause to arrest Royster and that Officer Nichols's use of force was not excessive, meaning that no violation of Royster's constitutional rights occurred. *See* Part II.A.1. Second, assuming that the Kona Grill is a state actor for § 1983 purposes, Royster's failure-to-train and failure-to-supervise claims against it fail because they "[can]not be sustained absent an underlying constitutional violation by the officer." *Sitzes*, 606 F.3d at 470. Third, Royster's state-law claims against Rosenkoetter and the Kona Grill fail because Officer Nichols had probable cause to arrest Royster. *See* Part II.A.3.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

-18-

BEAM, Circuit Judge, dissenting.

The district court granted summary judgment to all defendants, finding that Tommy Nichols, a sometimes Kansas City, Missouri, police officer, had probable cause to arrest William Royster. The court majority erroneously affirms this conclusion. Accordingly, I dissent.

The court's determination of the material facts at issue in this case and its conclusion that Nichols was functioning as a sworn Kansas City police officer at all relevant times are both problematic.

I agree with the court that "'[a]s this is an appeal from the grant of summary judgment, we review and recite the facts in the light most favorable to [Royster] as the non-moving party.'" Ante at 3 (second alteration in original) (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 814 n.3 (8th Cir. 2010)). But, the court fails to honor this requirement as to Nichols' arrest authority and as to his supposed probable cause to arrest Royster. The facts and law concerning these separate issues are intertwined and substantially related.

Kona Grill (Kona) was a tenant of the County Club Plaza (Plaza). The Plaza provided security services for its tenants, including Kona, and provided such services through Chesley Brown International, Inc., d/b/a Plaza Security (Chesley Brown). Nichols' day job, so to speak, was as a member of the Kansas City Police Department. However, at all times relevant to this dispute he was an employee of Chesley Brown. Chesley Brown had a security station "right above" Kona which included a jail that was at times referred to as a holding cell. During the time of his interactions with Royster, Nichols was being paid, and perhaps even provided fringe benefits by Chesley Brown, and was directly supervised by Chesley Brown personnel, not by members of the Kansas City Police Department.

-19-

The Kansas City Police Department specifically authorized its officers such as Nichols to accept employment as "off-duty [security] officer[s]" and the Department specifically stated that it "[did] not provide workers' compensation or general liability coverage for off-duty employment. The legal authority [of officers working off-duty] is limited to the enforcement of federal law, state statutes and municipal ordinances." But, "[o]fficers cannot use police authority to enforce a *private employer's policies and regulations.*"

With this for background, I turn to the facts, reviewing them as I must in the light most favorable to Royster, the non-moving party. I agree generally with a good bit of the court's factual recitation. I disagree, however, with several facts adopted by the court and include several material facts omitted by the court.

I agree that Royster went to Kona during the afternoon of February 28, 2006, and that he was asked to leave. The record indicates that this request was triggered when Royster's guest purportedly made an untoward comment to one of Kona's regular customers and Rosenkoetter, Kona's manager, asked the two of them to leave Kona. And, while Royster left without his credit card and without signing a "credit-card receipt," the evidence clearly indicates that he was not asked to sign a receipt, indeed, no such receipt was even generated by Kona until the later confrontation between Rosenkoetter, Nichols and Royster occurred upon Royster's return for his card. Thus, while Royster conceded that Nichols testified that he (Nichols) "was told [by Rosenkoetter] that the parties were being told to leave from an inappropriate comment and that they refused to pay their tab," ante at 3 (alteration in original), Royster did not concede that the statement was true, as stated in the court's footnote 3. Royster's evidence clearly shows that no demand for payment was made nor was a tab prepared and presented until Royster returned for his credit card and was accosted by Rosenkoetter in Nichols' presence.

Of more importance are other omitted facts and acts that occurred at Kona and in Nichols' presence. Royster's server at Kona testified that her (and by clear

inference Kona's) normal practice was for a server to print an "itemized receipt along with [the] credit[-]card receipt" to be presented to the customer but she did not 100 percent remember if she had done so at the time of this untoward event. But, on this occasion, she testified that after closing the tab and printing off the credit-card receipt after Rosenkoetter's request, she handed the card, the receipt and all other items to Rosenkoetter. Thus, reviewing these facts in the "light most favorable to [Royster]," Fisher, 619 F.3d at 814 n.3, Royster, in Nichols' presence, was either being presented a credit-card receipt without an itemization in violation of the normal practice at Kona (and most other establishments in America) or a credit-card receipt and an itemization that he was not permitted to examine before being required to sign the receipt–even though he vigorously demanded the right to see an itemization before being forced to do so. Neither Nichols nor Royster appear to dispute this scenario but even if they do, the evidence when viewed favorably to Royster, as required, clearly establishes this set of circumstances.

Also, from the evidence viewed favorably to Royster, it does not appear that Nichols actually made the probable cause decision to arrest in this instance, it was Nichols' employer Chesley Brown's client Rosenkoetter who did so. Indeed, before Nichols agreed to seize Royster, Nichols had asked Rosenkoetter if he would "sign a [General Ordinance Summons]." Rosenkoetter said he would sign the complaint on behalf of Kona. Thus, under these circumstances, Nichols' act was, rather than police business, more in the nature of enforcement of a private employer's (Kona's) "policies and regulations,"–an action prohibited by the Kansas City Police Department's published procedures.

Finally, as to whether Royster's detention was public or private business, after Nichols seized Royster he did not immediately turn him over to the custody of the police department. He handcuffed Royster, over his seemingly valid protests given the state of his health, the nature of the offense and the conflict of interest Nichols had in the situation, and took him upstairs to the Chesley Brown jail cell. At this

location, Royster remained in handcuffs for some time, was refused toilet privileges and held for what appears to have been an unreasonable and an unpleasant period of time.

On the facts considered favorably to Royster, this case must be remanded for trial.  I dissent.

_____